## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Viet Anh Vo<br><br>       Plaintiff,<br>  v.<br><br>Rebekah E. Gee, Secretary of the Department of Health; Devin George, State Registrar; Michael Thibodeaux, Iberia Parish Clerk; Diane Meaux Broussard, Vermilion Parish Clerk; Louis J. Perret, Lafayette Parish Clerk,<br>             Defendants. | CASE NO. 2:16-CV-15639 _____<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

*No union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family. In forming a marital union, two people become something greater than once they were. As some of the petitioners in these cases demonstrate, marriage embodies a love that may endure even past death . . . . Their hope is not to be condemned to live in loneliness, excluded from one of civilization's oldest institutions. They ask for equal dignity in the eyes of the law. The Constitution grants them that right.*

*Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584, 2608 (2015).

1.    As the United States Supreme Court recently reaffirmed, marriage is a fundamental right secured by the Constitution.

2.    This lawsuit challenges the constitutionality of a state statute. Specifically, this lawsuit challenges the State of Louisiana's Act Number 436 ("Act 436"), also known as House Bill 836, which unduly burdens many marriage license applicants and effectively prevents other applicants from getting married at all, grossly violating their fundamental right to marriage and denying them the

equal protection of the law, based solely on the place of their birth, in violation of the Constitution of the United States.

3.     Plaintiff Viet "Victor" Anh Vo ("Mr. Vo" or "Plaintiff") has been denied his fundamental right to marriage by Louisiana state officials acting pursuant to the provisions of Act 436.

4.     Act 436, prevents certain individuals—principally marriage license applicants born outside of the United States and its territories and those who seek to marry them—from exercising their fundamental right to marry the person of their choosing. It does so by imposing additional burdens on those born outside of the United States and their intended spouses, making it harder, and in some cases impossible, to obtain a marriage license.

5.     Among its many changes to the marriage license application process, Act 436 requires that all applicants for a marriage license provide a certified birth certificate and permits that requirement to be waived only for individuals born in the United States or one of its territories. Individuals born outside of the United States are denied the opportunity to have the birth certificate requirement waived.

6.     Plaintiff was born in an Indonesian refugee camp after his parents— both Vietnamese nationals—fled Vietnam as refugees. His birth has never been officially recognized by Vietnamese or Indonesian authorities, and he was never issued a birth certificate. Mr. Vo has resided in Louisiana since he was three months old and became a United States citizen when he was eight years old.

2

7.     In 2016, Mr. Vo wished to marry his girlfriend of several years. He and his fiancée, a native-born U.S. citizen, attempted to obtain a marriage license from multiple Louisiana parish clerks, but were denied based on Mr. Vo's inability to provide a certified birth certificate, a valid and unexpired passport, or an unexpired visa accompanied by a Form I-94 issued by the United States, as required by Act 436.

8.     Mr. Vo meets all other requirements for obtaining a marriage license from the State of Louisiana, and would have been eligible for a marriage license but for his inability to provide the documents newly required by state law. The only impediments to Mr. Vo's ability to obtain a marriage license are the barriers Act 436 imposes on him because he was born outside of the United States.

9.     Because Mr. Vo attempted to obtain a marriage license and was denied, Defendants' policies and procedures substantially and directly interfere with his fundamental right to marry. Defendants' policies and procedures also discriminate against Mr. Vo because he was born outside the United States. Thus, these policies violate the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

10.     Moreover, because Defendants are attempting to regulate the terms under which immigrants can marry within the State of Louisiana in an effort to combat purported marriage fraud in the realm of immigration, Defendants' policies and procedures violate the Supremacy Clause of the United States Constitution.

11.     Without the Court's intervention, Mr. Vo—and others like him across the state—will continue to suffer irreparable injury from his inability to legally marry in his community, or anywhere in the state, under Louisiana state law.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1361 over Mr. Vo's claims under the United States Constitution.

13.     The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

14.     Venue is proper in the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(1) because Defendants perform their official duties in and throughout the State of Louisiana, and Defendant Devin George performs his official duties in the Eastern District of Louisiana.

## PARTIES

**Plaintiff**

15.     Plaintiff Viet Anh Vo is a United States citizen who resides in Lafayette, Louisiana. He was born in an Indonesian refugee camp after his parents—both Vietnamese nationals at the time of his birth—fled Vietnam as refugees. Mr. Vo was never issued a birth certificate or passport, and his birth has never been officially recognized by Vietnamese or Indonesian authorities.

16.     On November 29, 2014, Mr. Vo became engaged to Heather Pham, a natural-born U.S. citizen. Approximately two weeks before their wedding, which was to take place on February 6, 2016, Mr. Vo and his fiancée, Ms. Pham, applied

for a Louisiana state marriage license at the Vermilion Parish Clerk of Court's office. They were, however, denied a marriage license because Mr. Vo could not provide a birth certificate or valid passport as required by Act 436.

17.    Despite the fact that Mr. Vo provided other official documents to establish his identity, including a Social Security Number and a Louisiana state driver's license, the Vermilion Parish Clerk of Court refused to approve Mr. Vo and Ms. Pham's marriage license application, based on the provisions of Act 436.

18.    Eager to obtain a marriage license before their impending wedding ceremony, Mr. Vo and Ms. Pham called the Iberia Parish Clerk of Court and were told that they could not obtain a marriage license without presenting Mr. Vo's birth certificate. Mr. Vo and Ms. Pham also attempted to apply for a marriage license by visiting the Lafayette Parish Clerk of Court, but there too they were denied due to the birth certificate requirement. After obtaining advice from an immigration legal services office, about three days before the wedding, the couple returned to the Vermilion Parish Clerk of Court with a letter explaining why Mr. Vo did not have, and could not get, a birth certificate. They were denied a marriage license yet again.

19.    Mr. Vo and his fiancée were devastated and felt a loss of hope. Although they were able to obtain a sacramental marriage through their church, their marriage was not legally recognized by the state. Because of this, the couple felt as though their wedding had been a sham. Despite being United States citizens

and life-long residents of Louisiana, the state refuses to grant them a marriage license and thereby legally recognize their marriage.

**Defendants**

20.     At all times relevant to this action, **Defendant Rebekah Gee** has been the Secretary of the Department of Health and Hospitals for the State of Louisiana, a subdivision of which is the Office of the State Registrar. The State Registrar is responsible for compiling and issuing vital records for state residents, including marriage licenses. On information and belief, the Department of Health has actively sought to ensure parish clerks enforce the requirements of Act 436. Defendant Gee is responsible for oversight of the Department of Health and its subdivisions. Defendant Gee is sued in her official capacity.

21.     At all times relevant to this action, **Defendant Devin George** has been the State Registrar and Director of the Office of Vital Records. As State Registrar, Defendant George is responsible for overseeing the compilation and issuing of vital records—including marriage licenses—for state residents. On information and belief, the State Registrar has actively worked to ensure parish clerks enforce the requirements of Act 436. Further, on information and belief, the State Registrar exercised its authority under Louisiana Revised Statute Section 251 to issue a consolidated marriage application and marriage license form that incorporates the provisions of Act 436. Defendant George is sued in his official capacity.

22.    At all times relevant to this action, **Defendant Michael Thibodeaux** has been the Clerk of Court for Iberia Parish. Iberia Parish is one of the parishes that refused to issue Plaintiff Vo a marriage license. Defendant Thibodeaux is sued in his official capacity.

23.    At all times relevant to this action, **Defendant Diane Meaux Broussard** has been the Clerk of Court for Vermilion Parish. Vermilion Parish is one of the parishes that refused to issue Plaintiff Vo a marriage license. Defendant Broussard is sued in her official capacity.

24.    At all times relevant to this action, **Defendant Louis J. Perret** has been the Clerk of Court for Lafayette Parish. Lafayette Parish is one of the parishes that refused to issue Plaintiff Vo a marriage license. Defendant Perret is sued in his official capacity.

## BACKGROUND

**Act 436**

25.    Act 436 carves out a certain class of Louisiana residents, principally foreign-born residents as well as their intended spouses, who effectively no longer enjoy the freedom to marry. By its terms, Act 436 imposes cumbersome, and sometimes impossible to meet, new documentary requirements for obtaining a marriage license on Louisiana residents born outside of the United States.

26.    Act 436 was known as House Bill 836 when it was proposed legislation in the Louisiana House of Representatives. House Bill 836, originally House Bill

716, was introduced by Louisiana State Representative Valarie Hodges on April 3, 2015. It was heard before the House Committee on Civil Law and Procedure on May 5, 2015, and by the Senate Committee on Judiciary on May 26, 2015. After consideration by a conference committee of both houses of the State Legislature, HB 836 was passed by the Louisiana State Legislature on June 11, 2015. Then-Governor Bobby Jindal signed it on July 1, 2015. After the bill was signed into law, HB 836 came to be known as Act 436.

27.    Prior to the enactment of Act 436, the requirements for obtaining a marriage license in the State of Louisiana were much less onerous for all Louisiana residents. In Orleans Parish, for example, applications for a marriage license could be made by either party to the marriage and only one party needed to be present at the time of making the application. That party could provide the required documentation for both parties to the marriage. To obtain a marriage license, the State required:

(a) a current driver's license, current state identification, or passport;

(b) a certified copy of a birth certificate or a certified birth card for both parties (but applicants not born in Louisiana could apply to have this requirement waived by a judge of the First City Court);

(c) Social Security Numbers for both parties (but if one or both parties did not have a Social Security Number, they could sign a statement to that effect and appear in person);

(d) a certified copy of a final divorce decree if either party had been divorced;

(e) a certified copy of a death certificate of the former spouse if either party was a widow or widower; and

f) a $27.50 fee, plus $5 for each certified copy of the marriage certificate desired by the parties.

28.     Act 436 amended Title 9, sections 221, *et al.* of the Louisiana Revised Statutes, and made significant changes in Louisiana's requirements for obtaining a marriage license. In general, the Act put in place a complex web of new and sometimes unobtainable requirements for those born outside of the United States or who may lack a Social Security Number, a valid and unexpired passport, or an unexpired visa. Specifically, the new requirements in Act 436 include:

(a) requiring both parties to the marriage to swear to and sign the application before a notary public, deputy clerk, or deputy registrar;

(b) presentation of either a valid and unexpired passport from the country of birth, or an unexpired visa accompanied by a Form 1-94 issued by the United States "[i]f a party does not have a Social Security Number issued by the United States Social Security Administration because the party is not a citizen or lawful permanent resident of the United States";

(c) an acknowledgement by the parties that they are "free to marry, that the information contained in the application is true and correct, and that each party understands that falsification of the application shall constitute the filing of false public records";

(d) presentation, by both parties, of a "valid and unexpired driver's license, a government issued identification card, or a valid and unexpired passport from the country of his birth or an unexpired visa accompanied by Form I-94 as issued by the United States";

(e) presentation, by both parties, of a certified copy of their birth certificate, and if either party was born outside of the United States or its territories, that party must submit a birth certificate under the seal of the United States or **all** of the following:

    (1) "a copy of the person's birth certificate under the raised seal or stamp of the vital statistics registration authority of the person's place of birth";

    (2) "if the birth certificate is not printed in English, the party shall submit a translated copy in addition to the copy" of the original, and

    (3) "a valid and unexpired passport or an unexpired visa accompanied by a Form I-94 issued by the United States, verifying that the applicant is lawfully in the United States"; La. Stat. Ann. §§ 9:226(C)(1)(a), 226(C)(2) (2016), (Ex. A);

(f) if no birth certificate is available for an applicant, the party is required to submit a letter signed by the proper registration authority of the state, territory or country of the place of birth of the applicant, and file the letter with a court conducting a hearing; and

(g) the court conducting a hearing must demand proof of birth facts, including the letter mentioned previously and "other competent evidence that the applicant was born in any state or territory of the United States" before ordering that the issuing official issue a marriage license without the applicant submitting a birth certificate. La. Stat. Ann. § 9:228, (Ex. A).

29.    The Act's harmful impact on those born outside of the United States was no accident. Act 436 was intended to discriminate against those born outside of the United States. During the legislative debate on amendments to HB 836, legislators were aware of and discussed that the proposed legislation would bar immigrants, particularly undocumented immigrants or other immigrants who may lack Social Security Numbers or U.S.-issued birth certificates, from marrying in Louisiana. Senator Appel, for example, expressed concern that, unless the bill was amended to allow such immigrants to provide affidavits of their identity, Act 436 could block immigrants from being able to lawfully marry in Louisiana. Despite these concerns, the legislature failed to clarify or amend the law to ensure that immigrants would not be subject to burdensome requirements that would effectively deny them the fundamental right to marry their intended spouse.

30.    Act 436 is an unlawful state attempt to usurp federal immigration law. On September 28, 2015, Act 436's legislative sponsor, Valarie Hodges, issued a press release after the law was signed by the Governor. The press release indicated that the purpose of the law was to combat immigration fraud. The law would do so, the press release stated, by requiring applicants to sign an affidavit verifying

that they are in the United States legally and by requiring them to present a Social Security Number or, if they are noncitizens, a valid, unexpired passport issued by the federal government. State Representative Hodges was quoted as saying that "[m]arriage fraud is a serious issue here in the United States that we must address. *It is time that legislation be proposed across the country to maintain the legitimacy of the immigration process.* HB 836 of the 2015 regular session (i.e., Act 436) has been put into place to ensure wedding applications and licenses here in Louisiana facilitate proper procedures and protect against marriage fraud" (emphasis added).

31.     Critically, Act 436 does not provide a procedure for appealing the denial of an application for a marriage license. Nor does Act 436 provide the ability to waive its new identity document requirements in most cases, with the exception of the requirement to provide a certified birth certificate. However, the waiver of that requirement is only available to applicants born in a state or territory of the United States, not to naturalized citizens and noncitizens born outside of the United States or its territories. La. Stat. Ann. § 9:228 (2016), (Ex. A).

32.     In short, since Act 436 became effective on January 1, 2016, the new document requirements for applicants attempting to obtain a marriage license have changed dramatically. For example, in Lafayette Parish, one of the locations where Mr. Vo attempted to obtain a marriage license, prior to Act 436, any applicant could obtain a waiver of the birth certificate requirement by presenting a signed

"letter of no record" from the proper registration authority indicating the agency had made a thorough search and no birth record was found. This is no longer the case. This "letter of no record" must now be filed with a court specified by Act 436, the court must hold a hearing demanding additional birth facts, and the court must then issue an order to allow the issuance of a license. Foreign-born applicants like Mr. Vo are not eligible for the waiver at all.

33.    On information and belief, Defendant Lafayette Parish has been aware of the obstacles to obtaining marriage licenses posed by the new document requirements of Act 436 to persons in situations similar to Mr. Vo—naturalized citizens who do not have a certified copy of their foreign birth certificate.

34.    Additionally, on information and belief, Defendants are denying marriage licenses to various Louisiana residents, including foreign-born couples where at least one party is undocumented and cannot produce a birth certificate, and couples where one party is a naturalized citizen without a birth certificate and the other party is on a fiancée visa.

**Act 436's Unconstitutional Requirements Deny Plaintiff the Fundamental Right to Marry**

35.    Mr. Vo, now 31 years old, was born in an Indonesian refugee camp after his parents fled Vietnam due to civil strife. When Mr. Vo was three months old, he and his parents moved to the United States as refugees, and Mr. Vo has lived in Louisiana since that time. Neither Mr. Vo nor his parents have any contemporaneous record of his birth. Due to the circumstances of his birth, Mr. Vo

is unable to obtain a birth certificate from either Vietnam or Indonesia because neither the government of Indonesia nor the government of Vietnam has ever recognized his birth formally. If there exists a record of his birth, neither Mr. Vo nor his parents have it, nor are they able to obtain it. But many official documents from the United States government reflect Mr. Vo's date of birth, including a document approving Mr. Vo's refugee status, a biographical information document, and a document approving Mr. Vo's lawful permanent resident status.

36.    Mr. Vo was a lawful permanent resident from his arrival to the United States until he was eight years old. When Mr. Vo was eight years old, his father obtained United States citizenship. Because he was younger than 18 at the time, Mr. Vo automatically derived United States citizenship on the date that his father became a U.S. citizen. *See* 8 U.S.C. § 1431. Not realizing he had derived citizenship, in 2007, Mr. Vo mistakenly submitted an application for naturalization, which the United States Citizenship and Immigration Services denied because the agency recognized that Mr. Vo already had derived U.S. citizenship through his father. Mr. Vo is in the process of obtaining a certificate of citizenship and a United States passport, but neither document will be sufficient to meet the requirements of Act 436.

37.    Mr. Vo was engaged to Heather Pham on November 29, 2014. Ms. Pham is a United States citizen by birth, born in Louisiana. Just two weeks before their wedding, which was slated to occur on February 6, 2016, Mr. Vo and Ms.

Pham attempted to obtain a marriage license at the Vermilion Parish Clerk of Court.

38.     Despite having a valid Social Security Number and Louisiana state driver's license, Mr. Vo and Ms. Pham were denied a marriage license by the Vermilion Clerk of Court because Mr. Vo could not produce a birth certificate or valid passport, according to the terms of Act 436. Mr. Vo attempted to explain why he did not have a birth certificate and could not get one due to the circumstances of his birth, to no avail. They were similarly denied a marriage license by the Iberia and Lafayette Parish Clerks of Court.

39.     Unable to obtain an official marriage license from the State of Louisiana, and feeling desperate and lost, Mr. Vo and Ms. Pham proceeded to hold a sacramental marriage through their Catholic church, St. Jude in Lafayette. They had been planning their wedding for over a year, already had spent thousands of dollars, and were expecting to be joined by 350 guests to celebrate their union on that day. Their sacramental marriage, however, is not officially recognized by the state of Louisiana and, to this day, they are not legally married.

40.     Mr. Vo and Ms. Pham are frustrated and embarrassed by their inability to obtain a marriage license in Louisiana, the state they consider home, despite multiple attempts to do so at a number of parishes. Mr. Vo and Ms. Pham also have suffered the indignity of getting sacramentally married without official state recognition of their union. They have had to explain to friends and relatives that they are "not really" married, despite their wedding. The fact that his marriage

to the woman he loves is not legally recognized by the state of Louisiana is constantly in the back of Mr. Vo's mind.

41.    Moreover, the denial of a marriage license has resulted in the denial of the multiple state and federal benefits that would accrue to the couple due to marriage. For example, a legally recognized marriage would allow Mr. Vo and Ms. Pham to file joint tax returns with federal and state authorities; claim Social Security, Medicare, and disability benefits for the spouse; make medical decisions if one spouse is incapacitated; and allow each spouse to inherit a share of the other spouse's estate.

42.    To obtain a valid marriage license, Mr. Vo and Ms. Pham would be forced to drive away from their home community for several hours and across the Louisiana state border to a nearby state that does not have the burdensome requirements of Act 436 and that would accept the identity documents that Mr. Vo is able to provide. This drive would be at great cost of both time and money, which is especially burdensome to Mr. Vo because of his responsibilities as a small business owner in his hometown of Lafayette. Additionally, Mr. Vo and Ms. Pham want to be married in the state that they call home and do not want to leave Louisiana to obtain a marriage license from another state to which they have no connection.

## NEED FOR DECLARATORY RELIEF

43.    An actual controversy has arisen and now exists between Plaintiff and Defendants related to their respective rights and duties. Defendants have

unlawfully failed to comply with the constitutional guarantees of Due Process and Equal Protection, and continue to violate the Supremacy Clause, by engaging in the acts and omissions described in this Complaint.

44.     Plaintiff has no administrative remedy because Defendants' policy is to deny the marriage license application of any applicant unable to submit the required documentation. Nor can Plaintiff avail himself of a waiver of the documentary requirements of Act 436, La. Stat. Ann. § 9:228 (2016), (Ex. A). There is no administrative procedure through which to appeal the denial of one's marriage application.

## NEED FOR INJUNCTIVE RELIEF

45.     Plaintiff is entitled to a preliminary and permanent injunction. Defendants have acted to deprive Plaintiff of his constitutional rights. Plaintiff has suffered irreparable harm and the loss of fundamental due process and equal protection under the law, and will continue to be subjected to the same irreparable harm as the result of being denied the ability to marry in Louisiana. Defendants have been and are aware of the deprivations complained of herein and have refused to remedy the harm by issuing a marriage license to Plaintiff. Plaintiff has no plain, adequate, or speedy remedy at law.

## FIRST CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment Right to Equal Protection
### Discriminatory Denial of Marriage License)

46.     Plaintiff re-alleges and incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

47.     Under the Fourteenth Amendment to the United States Constitution, all persons subject to the jurisdiction of the United States are entitled to equal protection of the laws.

48.     By requiring a birth certificate and passport or visa and Form I-94 and providing no possibility of waiving that requirement for foreign-born individuals, Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana Revised Statutes, as amended by Act 436, deny Plaintiff the equal protection of the law by discriminating against him based on his national origin (a suspect classification) through subjecting him to legal requirements not imposed on other persons born in the United States and its territories seeking to obtain a marriage license.

49.     Sections 226(C)(1)(a), 226(C)(2) and 228 serve no, and are not narrowly tailored to address, any compelling government interest.

50.     Sections 226(C)(1)(a), 226(C)(2) and 228 therefore violate Plaintiff's constitutional right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

## SECOND CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment Right to Due Process—Deprivation of Fundamental Right to Marry Under State Law)

51.     Plaintiff re-alleges and incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

52.     Under the Fourteenth Amendment, those threatened with the loss of liberty or property are entitled to due process. The right to marry is a fundamental right recognized by the United States Constitution. The substantial and direct interference upon, including the denial of, the exercise of this fundamental right is a violation of the Due Process Clause of the Fourteenth Amendment.

53.     By requiring a birth certificate and passport or visa and Form I-94 and providing no possibility of waiving that requirement for foreign-born individuals, Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana Revised Statutes, as amended by Act 436, substantially and directly interfere with Plaintiff's fundamental right to marry.

54.     Sections 226(C)(1)(a), 226(C)(2) and 228 serve no, and are not narrowly tailored to address, any compelling government interest.

55.     Sections 226(C)(1)(a), 226(C)(2) and 228 therefore violate Plaintiff's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF
### (Violation of the Supremacy Clause—Unlawful State Effort to Regulate Immigration)

56.     Plaintiff re-alleges and incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

57.     Article VI, Section 2 of the Constitution, the Supremacy Clause, mandates that federal law preempt any state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is

constitutionally reserved to the federal government. Similarly, the Supremacy Clause mandates that federal law preempt any state regulation that conflicts with federal law, either when it is impossible to comply with both the state and federal regulations, or when the state law interposes an obstacle to the achievement of Congress's discernible objectives.

58.    The federal government has exclusive and plenary power over the regulation of immigration. The immigration laws of the United States do not bar, or substantially burden, foreign-born persons from obtaining a marriage license. In fact, the immigration laws of the United States explicitly recognize and permit the marriage of foreign-born persons.

59.    Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana Revised Statutes, as amended by Act 436, legislate in an exclusive area occupied by the federal government by regulating marriage fraud in the immigration context, and create a conflict with the federal government's power and ability to regulate and prosecute marriage fraud carried out to obtain an immigration benefit.

60.    Sections 226(C)(1)(a), 226(C)(2) and 228 therefore violate the Supremacy Clause of the United States Constitution and are preempted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant him the following relief:

A.    A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the denial of marriage licenses due to the inability to meet the unconstitutional requirements imposed by Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana

Revised Statutes, as amended by Act 436, is a violation of Due Process and Equal Protection, attempts to regulate immigration in the state of Louisiana, and interferes with the federal regulation of immigration in the United States, in violation of the Supremacy Clause of the United States Constitution.

B. A preliminary and permanent injunction enjoining Defendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them from further denying a marriage license to Plaintiff because he cannot provide the documents required by Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana Revised Statutes, as amended by Act 436, including a certified birth certificate, a valid and unexpired passport, or a valid visa with a Form I-94 issued by the United States;

C. An order awarding Plaintiff costs of suit, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

D. Such other and further relief as the Court deems equitable, just, and proper.

//

//

//

//

//

//

//

//

//

Respectfully submitted this 18th day of October, 2016.

By /s/

Mary Yanik, Trial Attorney
(LA Bar No. 36973)
Jennifer J. Rosenbaum
(LA Bar No. 31946)
*Admitted to practice in the Eastern
District of Louisiana*
NEW ORLEANS WORKERS'
CENTER FOR RACIAL JUSTICE
217 N. Prieur St
New Orleans, LA 70112
T: (504) 309-5165
*myanik@nowcrj.org*
*jjrosenbaum@nowcrj.org*

Karen C. Tumlin*
(CA Bar No. 234691)
Nora A. Preciado*
(CA Bar No. 239235)
Alvaro M. Huerta*
(CA Bar No. 274787)
NATIONAL IMMIGRATION LAW
CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
T: (213) 639-3900
*tumlin@nilc.org*
*preciado@nilc.org*
*huerta@nilc.org*

Lisa Gilford*
(CA Bar No. 171641)
Stacy R. Horth-Neubert*
(CA Bar No. 214565)
Maximillian Hirsch**
(CA Bar No. 301872)
Douglas Smith**
(CA Bar No. 290598)
Jeffery B. White*
(CA Bar No. 291086)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90026
T: 213.687.5000
*lisa.gilford@skadden.com*
*stacy.horth-neubert@skadden.com*
*maximillian.hirsch@skadden.com*
*douglas.smith@skadden.com*
*jeffery.white@skadden.com*

Marley Ann Brumme*
(MA Bar No. 687822)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
T: 617.573.4800
*marley.brumme@skadden.com*

*Pro hac vice application pending
** Pro hac vice application forthcoming*

*Attorneys for Plaintiff*