## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Viet Anh Vo<br><br>                    Plaintiff,<br><br>        v.<br><br>Rebekah E. Gee, Secretary of the Department of Health; Devin George, State Registrar; Michael Thibodeaux, Iberia Parish Clerk; Diane Meaux Broussard, Vermilion Parish Clerk; Louis J. Perret, Lafayette Parish Clerk;<br><br>                    Defendants. | CASE NO. 16-cv-15639-ILRL-MBN |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Mary Yanik, Trial Attorney
(LA Bar No. 36973)
Jennifer J. Rosenbaum
(LA Bar No. 31946)
*Admitted to practice in the Eastern District of Louisiana*
NEW ORLEANS WORKERS'
  CENTER FOR RACIAL JUSTICE
217 N. Prieur St
New Orleans, LA 70112
T: (504) 309-5165
*myanik@nowcrj.org*
*jjrosenbaum@nowcrj.org*

Karen C. Tumlin*
Nora A. Preciado*
Alvaro M. Huerta*
NATIONAL IMMIGRATION
  LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
T: (213) 639-3900
*tumlin@nilc.org*
*preciado@nilc.org*
*huerta@nilc.org*

*Attorneys for Plaintiff*

Lisa Gilford*
Stacy R. Horth-Neubert*
Maximillian Hirsch*
Jeffery B. White*
SKADDEN, ARPS SLATE, MEAGHER &
  FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90026
T: (213) 687-5000
*lisa.gilford@skadden.com*
*stacy.horth-neubert@skadden.com*
*maximillian.hirsch@skadden.com*
*jeffery.white@skadden.com*

Marley Ann Brumme*
SKADDEN, ARPS SLATE, MEAGHER &
  FLOM LLP
500 Boylston Street
Boston, MA 02116
T: (617) 573-4800
*marley.brumme@skadden.com*

*Admitted pro hac vice*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ......................................................................................3

    A.    The Parties ..............................................................................................3

    B.    Act 436 Intentionally Interferes  With The Rights Of Foreign-Born Marriage License Applicants ...................................................................4

        1.    Act 436 Changed The Requirements To Marry In Louisiana, Placing Special Burdens On Persons Born Outside Of The United States ............................................................................4

    C.    Act 436's Special Burdens On Foreign-Born Persons Are Intentional ..................6

    D.    Mr. Vo Was Denied A Marriage License Because Of Act 436..............................8

LEGAL STANDARD...............................................................................................9

ARGUMENT .........................................................................................................9

I.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE BIRTH CERTIFICATE PROVISIONS VIOLATE THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT ..............10

    A.    The Birth Certificate Provisions Unconstitutionally Deny  Mr. Vo The Equal Protection Of The Law Based On His National Origin ..............................11

    B.    The Birth Certificate Provisions  Unconstitutionally Deny Mr. Vo The Fundamental Right To Marry ...............................................................12

    C.    The Birth Certificate Provisions Are  Not Narrowly Tailored To Serve A Compelling State Interest.......................................................................15

II.    PLAINTIFF ALSO IS LIKELY TO SUCCEED ON THE MERITS  BECAUSE ACT 436 IS PREEMPTED UNDER THE SUPREMACY CLAUSE ............................18

    A.    Act 436 Is Field Preempted..................................................................18

    B.    Act 436 Is Conflict Preempted...............................................................20

III.   PLAINTIFF WILL CONTINUE TO SUFFER  IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF ...............................................................22

IV.   THE BALANCE OF HARMS STRONGLY FAVORS THE PLAINTIFF....................23

V.    THE PUBLIC INTEREST WILL  BE SERVED BY A PRELIMINARY INJUNCTION ................................................................................................25

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

Adarand Constructors, Inc. v. Pena,
    515 U.S. 200 (1995) ........................................................................................15

Arizona v. United States,
    132 S. Ct. 2492 (2012) ..............................................................19, 20, 21, 22

Awad v. Ziriax,
    670 F.3d 1111 (10th Cir. 2012) .....................................................................25

Bassett v. Snyder,
    951 F. Supp. 2d 939 (E.D. Mich. 2013) ........................................................23

Buck v. Stankovic,
    485 F. Supp. 2d 576 (M.D. Pa. 2007) ..................................................... *passim*

Buckman Co. v. Plaintiff's Legal Committee,
    531 U.S. 341 (2001) ......................................................................................20

Burns v. Hickenlooper,
    No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014) ....................23

Campaign for S. Equality v. Bryant,
    64 F. Supp. 3d 906 (S.D. Miss. 2014) .....................................................23, 24

Cleveland Board of Education v. Lafleur,
    414 U.S. 632 (1974) ......................................................................................13

Condon v. Healy,
    21 F. Supp. 3d 572 (D.S.C. 2014) ...............................................................23

Crosby v. National Foreign Trade Council,
    530 U.S. 363 (2000) ......................................................................................20

Courtroom Sciences, Inc. v. Andrews,
    No. 3:09-CV-251-O, 2009 WL 1313274 (N.D. Tex. May 11, 2009) ..............................10

Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC,
    710 F.3d 579 (5th Cir. 2013) ........................................................................22

DeCanas v. Bica,
    424 U.S. 351 (1976) ......................................................................................18

Deerfield Med. Center v. City of Deerfield Beach,
    661 F.2d 328 (5th Cir. Unit B 1981) .............................................................22

De Leon v. Perry,
    975 F. Supp. 632 (W.D. Tex. 2014) ......................................................22, 23, 24

Dimalanta v. Dimalanta,
    No. CV 80-0278A, 81-0018A, 1983 WL 30222 (D. Guam Mar. 4, 1983) ......................19

G & V Lounge, Inc. v. Michigan Liquor Control Comm'n
    23 F.3d 1071 (6th Cir. 1994) ........................................................................25

Graham v. Richardson,
    403 U.S. 365 (1971) ........................................................................11, 12, 19

Hobby Lobby Stores, Inc. v. Sebelius,
    723 F.3d 1114 (10th Cir. 2013), <u>aff'd</u> 134 S. Ct. 2751 (2014) ........................................24

Hines v. Davidowitz,
    312 U.S. 52 (1941) ........................................................................................19

Janvey v. Alguire,
   647 F.3d 585 (5th Cir. 2011) ............................................................9, 10
League of United Latin American Citizens v. Wilson,
   908 F. Supp. 755 (C.D. Cal. 1995) .................................................19
Loving v. Virginia,
   388 U.S. 1 (1967) .......................................................11, 12, 13, 15
Manwani v. U.S. Dep't of Justice,
   736 F. Supp. 1367 (W.D.N.C. 1990) ......................................15, 17
Mapes v. United States,
   576 F.2d 896 (Ct. Cl. 1978) ...........................................................14
Marie v. Moser,
   65 F. Supp. 3d 1175 (D. Kan. 2014) .............................................23
Obergefell v. Hodges,
   135 S. Ct. 2584 (2015) ...................................................................13
Oyama v. California,
   332 U.S. 633 (1948) .......................................................................12
Plyler v. Doe,
   457 U.S. 202 (1982) .......................................................................11
Skinner v. Oklahoma,
   316 U.S. 535 (1942) .......................................................................13
Springtree Apartments, ALPIC v. Livingston Parish Council,
   207 F. Supp. 2d 507 (M.D. La. 2001) ...........................................22
Takahashi v. Fish & Game Comm'n,
   334 U.S. 410 (1948) .......................................................................12
Texans for Free Enterprise v. Texas Ethics Commission,
   732 F.3d 535 (5th Cir. 2013) .........................................................25
Turner v. Safley,
   482 U.S. 78 (1987) .........................................................................13
United States v. Alabama,
   691 F.3d 1269 (11th Cir. 2012) ...............................................19, 20
United States v. Carolene Products Co.,
   304 U.S. 144 (1938) .......................................................................11
United States  v. South Carolina,
   720 F.3d 518 (4th Cir. 2013) ...................................................18, 19
United States v. Virginia,
   518 U.S. 515 (1996) .......................................................................15
United States v. Windsor,
   133 S. Ct. 2675 (2013) ..............................................................14, 23
Villas at Parkside Partners v. City of Farmers Branch,
   726 F.3d 524 (5th Cir. 2013) .........................................................21
Wisconsin Department of Industry, Labor & Human Relations v. Gould,
   475 U.S. 282 (1986) .......................................................................20
Yick Wo v. Hopkins,
   118 U.S. 356 (1886) .......................................................................11
Zablocki v. Redhail,
   434 U.S. 374 (1978) ...................................................................13, 14

## STATUTES, RULES, & REGULATIONS                                  PAGE(S)

U.S. Const. art. I, § 8, cl. 3 ..................................................................................... 18

U.S. Const. art. I, § 8, cl. 4 ..................................................................................... 18

U.S. Const. amend. XIV ................................................................................... *passim*

8 U.S.C. § 1186a(b)(1) ...................................................................................... 19, 21

8 U.S.C. § 1255(i) .................................................................................................. 21

8 U.S.C. § 1255(e)(3) ............................................................................................ 21

8 U.S.C. § 1325(c) ............................................................................................. 19, 21

8 U.S.C. § 1431 ........................................................................................................ 3

LA. Rev. Stat. § 14.133 .......................................................................................... 17

LA. Rev. Stat. § 9:205 .............................................................................................. 4

LA. Rev. Stat. § 9:221 .............................................................................................. 4

LA. Rev. Stat. § 9:222 .............................................................................................. 4

LA. Rev. Stat. § 9:223 ......................................................................................... 6, 17

LA. Rev. Stat. § 9:224 ......................................................................................... 5, 16

LA. Rev. Stat. § 9:225 .......................................................................................... 4, 5

LA. Rev. Stat. § 9.226 .......................................................................................... 5, 9

LA. Rev. Stat. § 9:227 .............................................................................................. 6

LA. Rev. Stat. § 9:228 .......................................................................................... 6, 9

LA. Rev. Stat. § 9:235 .............................................................................................. 4

Act 436, § 2(1) ...................................................................................................... 15

## OTHER AUTHORITIES                                               PAGE(S)

11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1 (3rd ed.) ........................................................................ 22

11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.3 (3rd ed.) ........................................................................ 10

## PRELIMINARY STATEMENT

This case is about preserving the fundamental right to marry and ensuring the equal protection of the law for Louisiana's residents.  Rather than respecting well-established constitutional rights, Defendants[1] have deliberately interfered with and prevented certain marriage license applicants from exercising this right based on their national origin and/or immigration status, in gross violation of the Due Process and Equal Protection Clauses and in contravention of the Supremacy Clause.

Plaintiff Viet "Victor" Anh Vo is one such applicant.  After months of careful planning, Mr. Vo and his fiancée were set to marry in early 2016.  In advance of their wedding, the couple attempted to obtain a marriage license from the offices of each of Defendants Broussard, Perret, and Thibodeaux, Clerks for Vermillion, Lafayette, and Iberia Parishes, respectively.  Though he provided a Social Security number and a Louisiana state driver's license verifying his identity, Mr. Vo and his fiancée were denied a marriage license because Mr. Vo, who was born in an Indonesian refugee camp before emigrating to the United States as a child, could not provide a birth certificate.  The couple, greatly disappointed, proceeded to hold a sacramental marriage in their Catholic Church.  This marriage, however, is not legally recognized by Defendants or the State of Louisiana.

Mr. Vo's inability to obtain a marriage license is the direct result of the requirements of 2015's unprecedented Act Number 436 ("Act 436" or "the Act"), effective since January 1, 2016.  Unique among the states, the unconstitutional Act 436 amended Louisiana's marriage laws to prevent certain individuals from exercising their fundamental right to marry the person of their choosing.  The affected individuals are principally certain classes of non-citizens and

---

[1] The Defendants are state and local officials responsible for administering and/or issuing marriage licenses for the State of Louisiana or in particular parishes.  See pp. 3-4, infra.

naturalized citizens — and, by default, those who seek to marry them.  The Act passed despite the Legislature knowing it would deprive these individuals of their constitutional rights.

Among other things, the Act requires that all applicants for a marriage license present a certified copy of his or her birth certificate.  Among the Act's many changes to existing Louisiana marriage law, it facially discriminates against foreign-born applicants by, among other things, allowing only U.S.-born applicants lacking a birth certificate to apply to have that requirement waived.  Foreign-born applicants are not afforded any waiver of the birth certificate requirement.  This is true even for naturalized U.S. citizens, like Mr. Vo.

For Mr. Vo, countless others like him, and their intended spouses, Act 436 substantially interferes with — or, as in this case, totally bars — the exercise of the fundamental right to marry.  Mr. Vo now seeks the immediate assistance of the Court in the entry of a preliminary injunction to prevent Defendants from continuing to enforce the unconstitutional Act 436, which discriminates against him on the basis of his national origin and denies him his constitutional rights.  This Court should enjoin Defendants from enforcing the sections of Louisiana law that prevent applicants like Plaintiff from obtaining marriage licenses if they cannot provide the required documents — specifically, Sections 226(C)(1)(a), 226(C)(2) and 228 of Title 9 of the Louisiana Revised Statutes, as amended in Act 436.

Mr. Vo easily meets all of the requirements for entry of an injunction.  First, Mr. Vo is likely to succeed on the merits.  Act 436's provision allowing only U.S.-born persons to obtain a waiver of the birth certificate requirement, and therefore a marriage license, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.  Defendants cannot and will not meet their burden to prove that these provisions are narrowly tailored to a compelling state interest.  These provisions are similarly an unconstitutional attempt to usurp federal power over immigration, and are thus preempted by the

Supremacy Clause.  Second, deprivation of his constitutional right to marry is a well-established irreparable harm to Mr. Vo.  Third, the balance of harms clearly favors Mr. Vo; invidious discrimination and the deprivation of his constitutional rights far outweighs any alleged harm Defendants may attempt to conjure.  Finally, the public interest always favors protection of constitutional rights.

## FACTUAL BACKGROUND

### A.  The Parties

Plaintiff Viet "Victor" Anh Vo is a United States citizen who resides in Lafayette, Louisiana.  (Declaration of Viet Anh Vo ¶¶ 1, 5-6 (hereinafter, "Vo Decl.").)  Mr. Vo was born on January 13, 1985 in an Indonesian refugee camp after his parents fled Vietnam due to civil strife.  (Id. ¶ 2.)  When Mr. Vo was three months old, he and his parents moved to Louisiana as refugees.  (Id. ¶ 4.)  Mr. Vo is unable to obtain a birth certificate from either Vietnam or Indonesia because neither has ever officially recognized his birth.  (Id. ¶ 3.)  From his arrival in Louisiana until the age of eight years, Mr. Vo was a lawful permanent resident.  (Id. ¶ 5.)  When Mr. Vo was eight years old, his father obtained United States citizenship.  (Id.)  Because he was younger than 18 at the time, Mr. Vo automatically derived citizenship on the date that his father became a U.S. citizen, pursuant to 8 U.S.C. § 1431.

At all times relevant to this action, Defendant Rebekah Gee has been the Secretary of the Louisiana Department of Health and Hospitals, and Defendant Devin George has been the State Registrar and Director of the Office of Vital Records, a subdivision of the Department of Health and Hospitals.  Defendant George is responsible for overseeing the compilation and issuing of vital records — including marriage licenses — for state residents.  Defendants Michael Thibodeaux, Diane Meaux Broussard, and Louis J. Perret have been the Clerks of Court for Iberia, Vermillion, and Lafayette Parishes, respectively.  These parishes either refused to issue

Plaintiff Vo a marriage license or preemptively told him prior to his application that such a license would not be granted.

**B.    Act 436 Intentionally Interferes
With The Rights Of Foreign-Born Marriage License Applicants**

Act 436 facially discriminates against certain Louisiana residents, principally naturalized citizens and other born outside of the United States — as well as their intended spouses, wherever born, whatever status — who effectively no longer enjoy the right to marry in the state. By its terms, the Act imposes cumbersome, and sometimes impossible, documentary requirements on naturalized citizens and certain non-citizens seeking to obtain a marriage license.

**1.    Act 436 Changed The Requirements To Marry In Louisiana, Placing
Special Burdens On Persons Born Outside Of The United States**

Louisiana requires individuals desiring to marry to first obtain a marriage license. LA. Rev. Stat. § 9:205. In Orleans Parish, marriage licenses are issued by the State Registrar of Vital Records or a judge of the city court; in all other parishes, they are issued by the parish clerk of court. LA. Rev. Stat. § 9:221. A marriage license is valid for 30 days anywhere in Louisiana. LA. Rev. Stat. §§ 9:235, 9:222.

The Act amended certain requirements for marriage license applicants, some of which are pertinent here.[2] First, it specified the form of identification needed, requiring both parties to supply a "valid and unexpired driver's license, a government issued identification card, or a valid and unexpired passport from the country of his birth or an unexpired visa accompanied by Form I-94 as issued by the United States." LA. Rev. Stat. § 9:225.

_____

[2] Act 436 is attached to the Complaint as Ex. A (ECF No. 1-1). The Act went into effect on January 1, 2016.

Second, it amended the documentary requirements and waiver procedures for those lacking a Social Security number.  Now, after Act 436, "[i]f a party does not have a Social Security number issued by the United States Social Security Administration because the party is not a citizen or lawful permanent resident of the United States, the party must present either [i] a valid and unexpired passport from the country of his birth, or [ii] an unexpired visa accompanied by a Form 1-94 issued by the United States."  LA. Rev. Stat. § 9:224(6).

Third, Act 436 significantly altered the requirements and waiver procedures for applicants to provide a birth certificate.  After Act 436, both parties must provide a certified copy of their birth certificate.  LA. Rev. Stat. § 9:225.  If either party was born outside of the United States or its territories, that party must submit a birth certificate under the seal of the United States or ***all*** of the following:

- A copy of the person's birth certificate under the raised seal or stamp of the vital statistics registration authority of the person's place of birth; ***and***

- A valid and unexpired passport or an unexpired visa accompanied by a Form I-94 issued by the United States, verifying that the applicant is lawfully in the United States.

LA. Rev. Stat. § 9:226(C)(1)(a), (2) (emphasis added).[3]  That is, if a marriage license applicant was born outside of the United States, he or she must not only provide a birth certificate, but further documentation not required of U.S.-born citizens:  a valid passport or a visa and Form I-94.

Prior to Act 436, a waiver process was in place for any individual who could not produce a birth certificate when attempting to obtain a marriage license, wherever born.  The applicant

---

[3] Persons born in Louisiana may submit a birth certificate or short-form birth certification card. LA. Rev. Stat. § 9:226.A.  Persons born in other U.S. states or territories must submit a certified copy of a birth certificate "under the raised seal or stamp of the vital statistics registration authority of his place of birth."  LA. Rev. Stat. § 9:226(B).  Additionally, if not in English, the birth certificate must be accompanied by a sworn translation.  LA. Rev. Stat. § 9:226(C)(2).

was required to submit a letter signed by the proper registration authority of the state, territory or country of the place of birth of the applicant stating that a search was conducted and no record was found, and file the letter with a court of competent jurisdiction, which would conduct a hearing.  LA. Rev. Stat. §§ 9:227, 228 (2014).  The court was required to demand proof of birth facts, before ordering that the issuing official can issue a marriage license without the applicant submitting a birth certificate.  Id.

After the passage of Act 436, however, this waiver procedure is limited to ***only*** native-born citizens of the United States.  Upon "competent evidence that the applicant ***was born in any state or territory of the United States***," an applicant may obtain an order from a judge or justice of the peace ordering that the issuing official issue a marriage license without presentation of a birth certificate.  LA. Rev. Stat. § 9:228(A), (B) (emphasis added).  No similar provision exists for a foreign-born marriage license applicant, even if the applicant is a U.S. citizen.

Fourth, for the first time, Act 436 amended the marriage license laws to require both parties to the marriage to swear to and sign the application under penalty of perjury before a notary public, deputy clerk, or deputy registrar.  LA. Rev. Stat. § 9:223.

Finally, despite these heightened and discriminatory burdens, there is no mechanism to appeal the denial of a marriage license.  See generally LA. Rev. Stat. §§ 9:223-228.

C.    Act 436's Special Burdens On Foreign-Born Persons Are Intentional

Though Plaintiff is not required to so prove in support of his claims (see Parts I-V, infra), Act 436 was intended to discriminate against foreign-born persons and noncitizens, in a supposed effort to combat immigration-related marriage fraud.  During the discussion of amendments to its original predecessor Louisiana House bill, multiple legislators raised concerns about the application of the proposed legislation to bar immigrants — particularly undocumented

immigrants — from marrying.  For example, at the Senate debate on June 8, 2015, Senator

Conrad Appel noted that,

> If you have a case where a U.S. citizen wishes to marry an undocumented alien,
> even, I mean basically what this law does is says they can't get married. . . .  So,
> we're just going to say 12 million people can't get married? . . .  What if they're
> born in France? . . .  You have to be born in the United States or a territory.[4]

Despite these concerns, news reports have indicated, and discovery in this matter will

show, that the legislature persisted in adopting Act 436 to prevent perceived "fraudulent

marriage," which Senator A.G. Crowe, who supported the bill, claimed was the "number one

way to get a green card."[5]  Senator Crowe's comments echo those of the Act's sponsor,

Representative Valarie Hodges.  After passage of Act 436, news reports indicated that

Representative Hodges stated that the purpose of the law was to combat immigration-related

marriage fraud, stating that:

> Marriage fraud is a serious issue here in the United States that we must address. It
> is time that legislation be proposed across the country to maintain the legitimacy
> of the immigration process.  HB 836 of the 2015 regular session has been put into
> place to ensure wedding applications and licenses here in Louisiana facilitate
> proper procedures and protect against marriage fraud.[6]

In October 2016, after media outlets reported that Act 436 was, in fact, barring foreign-

born persons from marrying, Representative Hodges gave a statement to the press confirming

---

[4] (Ex. A (Transcript of Video of Senate Floor Debate, <u>available at</u>
https://www.youtube.com/watch?v=VkB2D9Sc9n8&feature=youtu.be (transcribed by counsel).)
"Ex. __" refer to the exhibits to the Declaration of Mary Yanik, submitted herewith.)

[5] (Ex. B (Brian Slodysko, *Legislature agrees to crack down on 'marriage fraud' involving illegal
immigrants, as critics contend problem doesn't exist*, The Advocate, June 18, 2015, <u>available at</u>
http://www.theadvocate.com/baton_rouge/news/politics/legislature/article_a907d8c7-9ae2-5446-
81b0-2f5040cb9e8d.html).)

[6] (Ex. C (*Rep. Hodges' HB 436 Works to Prevent Marriage Fraud by Non-Citizens*, Central
Speaks, Sept. 28, 2015, <u>available at</u> http://www.centralspeaks.com/2015/09/28/rep-hodges-hb-
836-works-to-prevent-marriage-fraud-by-non-citizens/).)  HB 836 was the precursor to Act 436,
introduced by Representative Hodges in the Louisiana State House of Representatives.

that this was precisely the intent of Act 436, noting that:  "[m]arriage fraud is not a victimless crime.  Its occurrence not only reduces respect for the federal government, but it also encourages hostility toward authentic immigrants."[7]

### D.    Mr. Vo Was Denied A Marriage License Because Of Act 436

Two weeks prior to their wedding, Mr. Vo and his fiancée, Heather Pham, a U.S.-born citizen, attempted to obtain a marriage license at the office of Defendant Broussard, the Vermillion Parish Clerk.  (Vo Decl. ¶ 10.)  Despite the fact that Mr. Vo provided other official documents to establish his identity, including a Social Security number and a Louisiana state driver's license, the Vermillion Parish Clerk's office refused to approve Mr. Vo and Ms. Pham's marriage license application, based on the provisions of Act 436.  (Id. )  Mr. Vo attempted to explain why he did not have a birth certificate and could not get one, to no avail.  (Id. )

Eager to obtain a marriage license before their impending and long-planned wedding ceremony, Mr. Vo and Ms. Pham called the office of Defendant Thibodeaux, Iberia Parish Clerk, and were told that they could not obtain a marriage license without presenting Mr. Vo's birth certificate.  (Id. ¶ 11.)  Mr. Vo and Ms. Pham attempted one last time to apply for a marriage license by visiting the offices of Defendant Perret, Lafayette Parish Clerk, but there too they were denied due to the birth certificate requirement.  (Id. ¶ 12.)  About three days before the wedding, the couple returned to the Vermillion Parish Clerk's office with a letter explaining why Mr. Vo did not have, and could not get, a birth certificate.  (Id. ¶ 13.)  They were again denied. (Id.)

---

[7] (Ex. D (Julia O'Donoghue, *Marriage restriction on legal immigrants will be fixed, legislator says*, The Times-Picayune, Oct. 13, 2016, underline available at http://www.nola.com/politics/index.ssf/2016/10/marriage_restriction_on_legal.html).)

Mr. Vo and his fiancée are devastated and feel a loss of hope  as a result of being denied the right to legally marry in their home state.  (Id. ¶ 15.)  Although they were able to obtain a sacramental marriage through their church, because their marriage is not legally recognized by their home state, the couple feel as though their wedding is invalid.  They are embarrassed about having to explain to family and close friends that their marriage is not acknowledged by the state.  (Id. ¶ 16.)  And still, despite being United States citizens and life-long residents of Louisiana who wish to have their marriage recognized by their home state, Defendants refuse to grant the couple a marriage license.  (Id. ¶ 17.) [8]

## LEGAL STANDARD

To secure a preliminary injunction, a plaintiff must establish:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011) (internal citation omitted).

## ARGUMENT

Sections 226(C)(1)(a), 226(C)(2) and 228 of Louisiana's marriage laws as amended by Act 436 (hereinafter, the "Birth Certificate Provisions") violate Mr. Vo's due process and equal protection rights under the Fourteenth Amendment by (i) denying him the equal protection of the

---

[8]  Mr. Vo's experience is not isolated.  In Lafayette Parish, one of the locations where Mr. Vo attempted to obtain a marriage license, internal Parish documents reflect the clear policy that foreign-born applicants, regardless of their immigration status, are not eligible for a waiver.  (Ex. F at 14.)  The Times-Picayune reports that "six to eight couples per month" are turned down in Orleans Parish for lack of a birth certificate.  (Ex. E (Julia O'Donoghue, *Louisiana denying marriage licenses to some immigrants*, The Times-Picayune, Oct. 11, 2016, available at http://www.nola.com/politics/index.ssf/2016/10/louisiana_immigrants_marriage.html).)  And a presentation given by Defendant George to the Clerks Institute  — a gathering of the parish clerks for all Louisiana parishes — on February 18, 2016 further confirms Act 436's purpose and effect.  Defendant George told the clerks that the law added "[r]equirements for demonstrating the identity of the applicants as U.S. citizens or legal residents."  (Ex. G at 3.)

law based on his national origin and (ii) precluding him from exercising his fundamental right to marry.  (Compl. ¶¶ 46-55.)  These provisions also are preempted by the Supremacy Clause because they impermissibly legislate in the Congressionally occupied field of, and conflict with federal law on, immigration-related marriage fraud.  (Id. ¶¶ 56-60.)  Each of the four relevant factors strongly supports the entry of an injunction in this case to protect Plaintiff's constitutional rights and uphold the balance of federal and state power.

## I.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE BIRTH CERTIFICATE PROVISIONS VIOLATE THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT

"To satisfy the first element of likelihood of success on the merits, [a plaintiff] in the preliminary injunction proceeding is not required to prove [his] entitlement to summary judgment."  Janvey, 647 F.3d at 595-96 (citation omitted); see also 11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.3 (2d ed. 1995) (noting that a plaintiff need only make out a prima facie case, not demonstrate that he is certain to win). "[T]he degree of persuasion necessary on the substantial likelihood of success factor may decrease as the level of persuasion in relation to the other three factors increases."  Courtroom Sci., Inc. v. Andrews, No. 3:09-CV-251-O, 2009 WL 1313274, at *3 (N.D. Tex. May 11, 2009) (internal citation omitted).

Mr. Vo is likely to succeed on the merits because the Birth Certificate Provisions as enforced by Defendants violate both the Equal Protection and Due Process Clauses.  When subject to strict scrutiny, as such violations must be, the Birth Certificate Provisions fail for lack of narrow tailoring to advance any compelling state interest.

**A.      The Birth Certificate Provisions Unconstitutionally Deny**
**Mr. Vo The Equal Protection Of The Law Based On His National Origin**

The Birth Certificate Provisions are unconstitutional under the Equal Protection Clause

because they impermissibly discriminate on their face against certain residents of Louisiana, like

Mr. Vo, on the basis of their national origin.

The Equal Protection Clause applies to protect <u>all</u> persons from invidious state

discrimination:  "The Fourteenth Amendment provides that 'no State shall . . . deny to *any*

*person within its jurisdiction* the equal protection of the laws.'"  Plyler v. Doe, 457 U.S. 202, 210

(1982) (emphasis original).  "These provisions are universal in their application, to all persons

within the territorial jurisdiction, without regard to any differences of race, of color, or of

nationality; and the protection of the laws is a pledge of the protection of equal laws."  Yick Wo

v. Hopkins, 118 U.S. 356, 369 (1886).  The Clause thus "directs that all persons similarly

circumstanced shall be treated alike."  Plyler, 457 U.S. at 216 (internal citation omitted).

While the states retain discretion to make some classifications, it is "presumptively

invidious" and "inherently suspect" for the states to make legislative classifications that

disadvantage a suspect class.  Id. at 217 (internal citations omitted); Graham v. Richardson, 403

U.S. 365, 371-72 (1971).  As Justice Stone recognized in a still-apt and oft-cited footnote,

"prejudice against discrete and insular minorities . . . tends seriously to curtail the operation of

those political processes ordinarily to be relied upon to protect minorities, and which may call for

a correspondingly more searching judicial inquiry."  U.S. v. Carolene Prods. Co., 304 U.S. 144,

153 n.4 (1938).  Accordingly, the Supreme Court "has consistently repudiated distinctions

between citizens solely because of their ancestry as being odious to a free people whose

institutions are founded upon the doctrine of equality."  Loving v. Virginia, 388 U.S. 1, 9 (1967)

(citation omitted).  A state therefore may not classify persons based on race, national origin, or

alienage without withstanding strict judicial scrutiny (see Part I.C, infra).  E.g., id. at 11 ("At the

11

very least, the Equal Protection Clause demands that racial classifications . . . be subjected to the most rigid scrutiny."); <u>Oyama v. California</u>, 332 U.S. 633, 645-46 (1948) (national origin); <u>Graham</u>, 403 U.S. at 371-72 (state alienage classifications); <u>Takahashi v. Fish & Game Comm'n</u>, 334 U.S. 410, 420 (1948) (same).

Consonant with these decisions, suspect classifications affecting the fundamental right to marry (<u>see</u> Section I.B, <u>infra</u>) have been unequivocally found to violate the Equal Protection Clause.  As the <u>Loving</u> Court held, "[t]here can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause."  388 U.S. at 12.  The same is unquestionably true if the state discriminates on the basis of national origin or alienage.

The Birth Certificate Provisions explicitly make a suspect classification based on national origin:  persons "born in any state or territory of the United States" are eligible for a waiver allowing them to marry without providing a birth certificate.  LA. Rev. Stat. § 228.  Foreign-born persons, such as Mr. Vo, are not.  <u>Id.</u>  Further, foreign-born persons — but not U.S.-born persons — are subject to an added requirement of presenting a valid passport or visa and Form I-94 <u>in addition to</u> their foreign birth certificate.  LA. Rev. Stat. § 226(C).  Thus, unless Defendants can show that the Birth Certificate Provisions are "necessary to the accomplishment" of a compelling state objective, they must similarly be struck down.  <u>Loving</u>, 388 U.S. at 11.

**B.    <u>The Birth Certificate Provisions
Unconstitutionally Deny Mr. Vo The Fundamental Right To Marry</u>**

The Birth Certificate Provisions are similarly infirm under the Due Process Clause because they significantly interfere with — and, in fact, totally foreclose — Mr. Vo, his fianceé, and others like them in Louisiana from exercising the fundamental right to marry.

Marriage is a fundamental right protected under the Due Process and Equal Protection Clauses.  <u>Obergefell v. Hodges</u>, 135 S. Ct. 2584, 2598 (2015) ("The Court has reiterated that the

right to marry is fundamental under the Due Process Clause.") (holding that same sex couples

have the fundamental right to marry).  See also Turner v. Safley, 482 U.S. 78, 94 (1987) ("[T]he

decision to marry is a fundamental right") (striking down policy preventing inmates from marrying

without substantial burden); Zablocki v. Redhail, 434 U.S. 374, 384 (1978) ("The right to marry is

of fundamental importance for all individuals."); Cleveland Bd. of Educ. v. Lafleur, 414 U.S. 632,

639-40 (1974) ("[F]reedom of personal choice in matters of marriage and family life is one of the

liberties protected by the Due Process Clause of the Fourteenth Amendment."); Skinner v.

Oklahoma, 316 U.S. 535, 541 (1942) (noting that marriage is "one of the basic civil rights of man").

As the Supreme Court stated,

> No union is more profound than marriage, for it embodies the highest ideals of
> love, fidelity, devotion, sacrifice, and family.  In forming a marital union, two
> people become something greater than once they were.  As some of the petitions
> in these cases demonstrate, marriage embodies a love that may endure even past
> death.  . . . Their hope is not to be condemned to live in loneliness, excluded from
> one of civilization's oldest institutions.

Obergefell, 135 S. Ct. at 2608.  The Court has "characterized marriage as the most important

relation in life, and the foundation of the family and of society, without which there would be

neither civilization nor progress."  Zablocki 434 U.S. at 384 (citations omitted) (striking down

statute preventing fathers owing back child support from marrying without court approval).

Accordingly, "[t]he freedom to marry has long been recognized as one of the vital personal rights

essential to the orderly pursuit of happiness by free men.  Marriage is one of the basic civil rights

of man, fundamental to our very existence and survival."  Loving, 388 U.S. at 12 (citation

omitted).

Although a state may impose reasonable regulations on marriage, states may not impose

regulations that "interfere directly and substantially with the right to marry," unless they are

narrowly tailored and necessary to address a compelling state interest.  Zablocki, 434 U.S. at

387; United States v. Windsor, 133 S. Ct. 2675, 2691 (2013) ("State laws defining and regulating

marriage, of course, must respect the constitutional rights of persons . . . ."); Mapes v. United States, 576 F.2d 896, 901 (Ct. Cl. 1978) (strict scrutiny applicable "where the obstacle to marriage is a direct one, i.e., one that operates to preclude marriage entirely. . .").

The fundamental right to marry is broadly held, regardless of where a person is born or of his alienage status.  In Buck v. Stankovic, 485 F. Supp. 2d 576 (M.D. Pa. 2007), a U.S.-born citizen and her undocumented immigrant fiancé brought suit after being denied a marriage license.  The licensing authority had adopted a policy requiring foreign nationals to present either a green card or foreign passport with a valid United States visa.  The policy thus banned undocumented immigrants, who by definition lack a green card or valid visa, from obtaining a marriage license, as well as other non-citizens.  Id.  The court found that the policy significantly interfered with both the citizen and immigrant fiancés' fundamental right to marry under the Due Process Clause because it placed "a direct legal obstacle in the path of persons desiring to get married."  Id. at 583.  Applying strict scrutiny, the court held that the couple were likely to succeed on the merits of their Due Process and Equal Protection Claims and issued a preliminary injunction barring further enforcement of the policy.

This Court should do the same.  The Birth Certificate Provisions undoubtedly "interfere directly and substantially" with the right to marry, by outright foreclosing exercise of that right in some instances, of at least three groups of people:  (i) foreign-born individuals like Mr. Vo without the ability to obtain a birth certificate at all, or those who cannot do so without significant burden; (ii) those who lack a passport or visa and Form I-94 to accompany the birth certificate; and (iii) those who wish to marry such individuals, like Mr. Vo's fiancée, wherever born.  Unless Defendants can satisfy their obligation to show that the Birth Certificate Provisions withstand strict scrutiny, they are unconstitutional and should be enjoined.

14

**C.    The Birth Certificate Provisions Are
        Not Narrowly Tailored To Serve A Compelling State Interest**

Under either an Equal Protection or Due Process analysis, then, Defendants have the

burden of satisfying strict scrutiny and proving that the Birth Certificate Provisions are

"narrowly tailored measures that further compelling governmental interests," Adarand

Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995), and "necessary to the accomplishment" of

those interests.  Loving, 388 U.S. at 11.  "The government's purpose, even if compelling, cannot

be pursued by means that broadly stifle fundamental personal liberties when the end can be more

narrowly achieved."  Manwani v. U.S. Dep't of Justice, 736 F. Supp. 1367, 1388 (W.D.N.C.

1990) (citation omitted).  Strict scrutiny requires the government's "justification [to] be genuine,

not hypothesized or invented *post hoc* in response to litigation."  United States v. Virginia, 518

U.S. 515, 533 (1996).

Defendants cannot meet their burden.  In enforcing the Birth Certificate Provisions,

Defendants simply have no legitimate or cognizable interest in preventing foreign-born

individuals without birth certificates from obtaining a marriage license, nor the Birth Certificate

Provisions enacted by Act 436 necessary to further any such interest.  Both of the two alleged

"fundamental interests" Act 436 identifies to purportedly justify its provisions, including the

Birth Certificate Provisions, fail to pass constitutional muster.  Indeed, both interests already

were tested in Buck and soundly rejected by the court.  This Court should do the same.

First, the law cites a "fundamental concern" for the "reliability and accuracy" of marriage

records.  Act 436, § 2(1).  But Defendants' administrative interest in maintaining accurate

records simply is not so compelling such that it could justify the invidious discrimination and

deprivation of the constitutional right to marry of its residents like Mr. Vo.  Nor are the Birth

Certificate Provisions narrowly tailored to advance this interest.

In Buck, the defendants claimed that requiring foreign nationals to provide a green card or visa demonstrating lawful presence in the United States to obtain a marriage license was necessary and narrowly tailored to ensure the authenticity and accuracy of foreign identity documents.  The court rejected this argument, holding that while a concern with inaccurate or falsified documents may be "well-placed," though not compelling, a prohibition on issuing marriage licenses to foreign-born persons who could not produce the required documentation was not a narrowly tailored solution.  485 F. Supp. 2d at 584.

Similarly, here, preventing foreign-born persons without a birth certificate from marrying altogether is staggeringly overbroad, not a necessary nor narrowly tailored solution to any purported concerns about the accuracy of state records.  There is simply no indication that allowing Mr. Vo to obtain a waiver of the Birth Certificate Requirements — like a U.S.-born citizen is entitled to do — would somehow undermine the "reliability and accuracy" of Louisiana's marriage records.  Nor is there any indication that Mr. Vo is not who he purports to be.  Indeed, Mr. Vo provided numerous other forms of identification when he was denied a marriage license.  (Vo Decl. ¶ 10.)  Accepting Mr. Vo's alternate forms of identification in lieu of a birth certificate, for example, would be more narrowly tailored to achieve Louisiana and Defendants' purported interest.

Indeed, the Act itself explicitly contains another, more closely tailored mechanism to ensure the accuracy of marriage records:  it requires applicants to swear or affirm to the accuracy of the information on the marriage application.  LA. Rev. Stat.§ 9:224(A)(7).  Applicants must verify the information on the form under oath, subject to prosecution for the filing of a false public record under Louisiana Criminal Code § 14.133.[9]  Id.  This attestation requirement is a far

---

[9] Louisiana Criminal Code § 14.133 provides that:  "Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or

*(cont'd)*

more closely tailored solution to combat potentially inaccurate records than preventing marriages by foreign-born persons altogether, as the Birth Certificate Provisions do.

Second, Act 436 cites an interest in "preventing and deterring fraudulent marriages."  But the "fraudulent marriages" that the Act seeks to address — those to obtain an immigration benefit (see pp. 6-8, supra) — already are addressed by the federal immigration laws, through the Immigration and Naturalization Act ("INA").  (See Section II, infra.)  As the Buck court noted, any interest that Louisiana and the Defendants may have in this federal issue (and, as shown below, there is none) is "not a sufficiently important state interest" to justify encroaching on the constitutional right to marry.  485 F. Supp. 2d at 584 (emphasis added).  Even if this purported interest were compelling, Act 436 and its Birth Certificate Provisions are not narrowly tailored to prevent immigration-related marriage fraud.  Rather, they are vastly overinclusive, preventing far more people from obtaining marriage licenses than those seeking to commit fraud.  See id.; Manwani, 736 F. Supp. at 1388-89 (holding that provision of federal Immigration Marriage Fraud Act that treated as suspect all marriages entered during the pendency of removal proceedings to be impermissibly broad and therefore failed strict scrutiny).  Indeed, as Defendant Thibodeaux told The Daily Advertiser in October 2016, he is "not aware of any" instances of such fraud in his parish since taking office in 1997.[10]

_____

*(cont'd from previous page)*
shall be fined not more than five thousand dollars, or both."  Under Act 436, the person may also "be ordered to pay restitution to the state if the state suffered a loss as a result of the offense." LA. Rev. Stat. § 9:223.

[10] (Ex. H (Jessica Goff, *Local couple becomes face of controversial immigration law*, The Daily Advertiser, Oct. 13, 2016, available at http://www.theadvertiser.com/story/news/2016/10/12/local-couple-becomes-face-controversial-immigration-law/91897998/).)

## II.     PLAINTIFF ALSO IS LIKELY TO SUCCEED ON THE MERITS BECAUSE ACT 436 IS PREEMPTED UNDER THE SUPREMACY CLAUSE

Act 436's stated purpose is the prevention and deterrence of immigration-related marriage fraud.  Act 436, § 2(2); pp. 6-8, supra.  Mr. Vo also is likely to succeed on the merits because the Act and its Birth Certificate Provisions are unconstitutional under the Supremacy Clause insofar as they impermissibly interfere and conflict with the immigration policy and laws of the United States.[11]

### A.     Act 436 Is Field Preempted

The federal government has the exclusive power to regulate immigration.  U.S. Const. art. I, § 8, cl. 4; cl. 3; DeCanas v. Bica, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is unquestionably exclusively a federal power.").  The federal government thus has exclusive authority to enact and enforce regulations concerning which noncitizens to admit, exclude, or remove, as well as to determine the conditions under which they can remain in the United States.  Pursuant to its powers, the federal government has established a comprehensive system of laws, regulations, and procedures that determine, subject to judicial review, whether and under what conditions a noncitizen may enter and remain in the United States, and when a noncitizen may be subject to removal.

Part of that comprehensive scheme includes laws aimed at deterring and punishing immigration-related marriage fraud.  Marriage fraud is a federal crime under the INA, and the federal marriage fraud statute both defines the offense and provides a thorough set of penalties

---

[11] Courts recognize three types of preemption:  "(1) express preemption, in which Congress explicitly states its intent to preempt state law; (2) field preemption, in which Congress occupies a certain field by regulating so pervasively that . . . there is no room left for the states to supplement federal law, or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject; and (3) conflict preemption, arising when a state law is preempted to the extent it actually conflicts with federal law."  United States v. South Carolina, 720 F.3d 518, 527-28 (4th Cir. 2013).

and other mechanisms designed to deter the practice.  8 U.S.C. § 1325(c) (defining marriage fraud and prescribing penalties of five years imprisonment and $250,000 fines); 8 U.S.C. § 1186a(b)(1) (describing additional penalty that a fraudulent marriage will not qualify a non-citizen for an adjustment of status on the basis of marriage).  Nothing in the statute indicates that Congress envisioned or intended that the states address immigration-related marriage fraud in parallel.  Cf. Dimalanta v. Dimalanta, Nos. CV 80-0278A, 81-0018A, 1983 WL 30222, at *3 (D. Guam Mar. 4, 1983) (when party argued that Guam could prevent aliens from bringing divorce proceeding, holding that "the Supremacy Clause restrains Guam courts from construing divorce laws so as to impose burdens upon aliens which Congress did not contemplate").

Moreover, where Congress has occupied a field, as here, "even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area," even if the state regulation purports to share the same goal.  Arizona v. United States, 132 S. Ct. 2492, 2502 (2012); Hines v. Davidowitz, 312 U.S. 52, 66-77 (1941) (where Congress has enacted an "all-embracing system," states cannot "enforce additional or auxiliary regulations").[12]  Because Congress has occupied the field of immigration-related

---

[12] See also Graham, 403 U.S. 365, 377 (finding state laws denying welfare benefits to lawful aliens preempted because such laws were tantamount to denying such persons residency and abode, and the federal government has plenary power over the admittance of aliens); South Carolina, 720 F.3d 518 (preempting state law that, inter alia, attempted to regulate harboring of undocumented immigrants and alien registration); United States v. Alabama, 691 F.3d 1269, 1282 (11th Cir. 2012) ("[A]ny attempt by Alabama to enforce its own requirements would dilute federal control over immigration enforcement and detract from Congress's comprehensive scheme. . . .  [A] state's shared goal and adoption of federal standards is insufficient to save its statute from a finding of field preemption.") (preempting regulations that, inter alia, attempt to regulate alien registration and employment); League of United Latin Am. Citizens v. Wilson, 908 F. Supp. 755, 770 (C.D. Cal. 1995) (preempting state law that, inter alia, attempted to regulate alien employment, registration, and education).

marriage fraud, there is no room for Louisiana to do so with Act 436, even if it shares the same objective with the United States.[13]

### B.   Act 436 Is Conflict Preempted

The Birth Certificate Provisions, as amended by Act 436, also are preempted  because they conflict with federal law on immigration-related marriage fraud.  "The ordinary principles of preemption include the well-settled proposition that a state law is preempted where it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Arizona, 132 S. Ct. at 2505.  Even where a state law attempts to achieve the same goals as federal law, "[c]onflict in technique can be fully as disruptive to the system Congress enacted as conflict in overt policy."  Id. at 2502 (alteration in original) (citation omitted).

Conflicting techniques found to be preempted often include divergent methods of enforcement and penalties.  As the Supreme Court recognized in Crosby v. National Foreign Trade Council, "a common end hardly neutralizes" the interference posed by "conflicting means."  530 U.S. 363, 364 (2000).  Otherwise, States would be free to establish their own

---

[13] Defendants may argue that marriage is a traditional area of state regulation and accordingly, Act 436's amendments to the marriage laws are entitled to a presumption against preemption. This, however, does not end the preemption inquiry, which "must contemplate the practical result of the state law, not just the means that a state utilizes to accomplish the goal."  Alabama, 691 F.3d at 1296.  In Buckman Co. v. Plaintiff's Legal Committee, 531 U.S. 341, 347 (2001), the Supreme Court held that a state tort cause of action — a traditional field for state regulation — was preempted by federal law where the underlying allegations sought to prevent fraud against federal agencies.  ("Policing fraud against federal agencies is hardly a field in which the States have traditionally occupied . . . ."); see also Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 379-80 (2000) (state law dealing with state's own purchasing power preempted); Wisconsin Dep't of Indus., Labor & Human Relations v. Gould, 475 U.S. 282, 283-84 (1986) (holding state law concerning the state's own purchase of goods and services intended to deter federal labor law violations preempted because the state could not enforce the requirements of federal regulations though its own statutory scheme).  Similarly, here, while it is true that marriage is a matter of traditional state concern, Act 436 seeks to deter federal immigration violations. Louisiana cannot use its state police power with respect to marriage to "enforce the requirements" of federal regulations, Gould, 475 U.S. at 291, or "polic[e] fraud against federal" immigration authorities.  Buckman, 531 U.S. at 347.

penalty schemes, which would inevitably "undermine[] the congressional calibration of force" embodied in the penalty scheme established by federal law.  Id. at 380 (finding Massachusetts law forbidding business transactions with Burma to be conflict preempted because of different penalties than federal law ); see also Arizona, 132 S. Ct. at 2503-05 (holding state law that imposed criminal sanctions on undocumented immigrants seeking employment preempted because federal law did not see fit to criminalize that conduct); Villas at Parkside Partners v. City of Farmers Branch, 726 F.3d 524, 528 (5th Cir. 2013) (finding city ordinance preventing immigrants from renting housing to be conflict preempted because it "set[] forth criminal offenses" for such conduct that federal law does not).

Here, Act 436 is conflict preempted because of the disparity in the technique used to address its purported shared goal of deterrence of immigration-related marriage fraud.  The INA provides for criminal sanctions — fines and imprisonment — for immigration-related marriage fraud and forbids adjustments in immigration status based on a fraudulent marriage.  8 U.S.C. § 1325(c) (providing for up to five years imprisonment and a $250,000 fine); 8 U.S.C. § 1186a(b)(1) (prevention of status adjustment for fraudulent marriage).  It does not seek to deter marriage fraud by preventing marriage by foreign-born persons altogether; indeed, numerous provisions of the INA explicitly contemplate the ability of foreign-born persons, regardless of their immigration status, to marry.  E.g., 8 U.S.C. §§ 1255(i) (permitting adjustment of status for those who entered without inspection on the basis of bona fide marriage to a citizen), 1255(e)(3) (permitting adjustment of status for person subject to deportation proceedings upon bona fide marriage to citizen).

The Act, by contrast, seeks to deter immigration-related marriage fraud by making it impossible for certain foreign-born individuals, including Mr. Vo, to obtain a marriage license at

all, even if their intention is not fraudulent.  This disparity in the method of enforcement stands as an obstacle to the federal scheme and triggers preemption.[14]

### III.   PLAINTIFF WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF

To satisfy the "irreparable harm" element, a plaintiff must show that there is a harm for which there is no adequate remedy at law.  Daniels Health Sci., LLC v. Vascular Health Sci., LLC, 710 F.3d 579, 585 (5th Cir. 2013) (affirming injunction).

Mr. Vo easily satisfies this test.  It is well-settled that the deprivation of a constitutional right is, on its own, an irreparable injury as a matter of law.  Deerfield Med. Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. Unit B 1981) (continuing deprivation of fundamental constitutional right constitutes irreparable harm); De Leon v. Perry, 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014) ("Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law."); Springtree Apartments, ALPIC v. Livingston Parish Council, 207 F. Supp. 2d 507, 515 (M.D. La. 2001) ("It has been repeatedly recognized by the federal courts that violation of constitutional rights constitutes irreparable injury as a matter of law.").[15]

---

[14] Further, the Act's attestation requirement — providing that applicants must swear to the accuracy of their applications under penalty of Louisiana's criminal law for providing false statements to authorities (LA. Rev. Stat. § 14:133) — establishes a second independent state mechanism for enforcement of immigration-related marriage fraud, with likely prosecutorial decisions differing from those of federal authorities.  While states may penalize the making of false statements, Act 436 calls for the prosecution and punishment of a person for immigration-related marriage fraud where the federal government has chosen or would choose a different measure to address the person's allegedly fraudulent marriage.  Arizona, 132 S. Ct. at 2505-07.

[15] As a leading commentator has noted, "When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary."  11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1 (3rd ed.).

Accordingly, courts across the country have held that the deprivation of the right to marry is an irreparable injury satisfying this element of injunctive relief.  E.g., Campaign for S. Equality v. Bryant, 64 F. Supp. 3d 906, 950 (S.D. Miss. 2014) (finding that deprivation of the constitutional right to marriage constituted irreparable harm); De Leon, 975 F. Supp. 2d at 663-64 (holding that violation of constitutional right to marriage is irreparable harm as a matter of law because "no amount of money can compensate the harm"); Marie v. Moser, 65 F. Supp. 3d 1175, 1204-05 (D. Kan. 2014) (holding that plaintiffs satisfied the irreparable injury requirement by showing a likely violation of their constitutional right to marriage); Burns v. Hickenlooper, No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014) (same); Bassett v. Snyder, 951 F. Supp. 2d 939, 970 (E.D. Mich. 2013) (finding irreparable injury where constitutional right to marriage was being "threatened or impaired").[16]

Buck is once again on all fours with this case.  There, the court found that the deprivation of the constitutional right to marriage, in and of itself, constituted irreparable harm to both the citizen and the non-citizen marriage applicants.  485 F. Supp. at 586.  Similarly, Mr. Vo already has been and continues to be irreparably harmed by the complete deprivation of his constitutional right to marry, not to mention by the deprivation of the concrete benefits from both the state and federal governments in areas such as healthcare and taxes, to which only legally married couples are entitled.  E.g., Windsor, 133 S. Ct. at 2695.

## IV.    THE BALANCE OF HARMS STRONGLY FAVORS THE PLAINTIFF

To obtain an injunction, "Plaintiffs must [next] establish that their threatened injuries outweigh any damage that the injunction may cause to the" defendant.  DeLeon, 975 F. Supp. 2d

---

[16] Cf. Condon v. Haley, 21 F. Supp. 3d 572, 588 (D.S.C. 2014) (denying motion to stay court's order overturning same-sex marriage ban because plaintiffs would be irreparably injured by continued enforcement of a state law found to deprive them of their constitutional rights).

at 664.  The balance of hardships easily, and heavily, tips in favor of Mr. Vo.  (See Section III,

supra.)

Defendants will not be harmed by the Court granting the preliminary injunction.  Simply

put, Mr. Vo's marital status is of no consequence to the Defendants.  There is no harm to the

state defendants from issuing an injunction that prevents the enforcement of an unconstitutional

statute.  E.g., Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013) (en

banc) (plurality), aff'd 134 S. Ct. 2751 (2014) ("[W]hen a law . . . is likely unconstitutional, the

interests of those [whom] the government represents, such as voters[,] do not outweigh a

plaintiff's interest in having its constitutional rights protected."); De Leon, 975 F. Supp. 2d at

664.

Act 436 impermissibly burdens the constitutional rights of Louisiana residents like Mr.

Vo, and the fact that Defendants may be forced to change their procedures to comply with the

constitution is no defense here.  See Campaign for S. Equality, 64 F. Supp. 3d at 950-51 (finding

that purported harm to defendant county clerk and state officials of administrative obstacles with

modifying its paperwork and computer systems only a "minor inconvenience at best,"

substantially outweighed by deprivation of constitutional right to marriage).  No harm would

come to the Defendants or the State of Louisiana by preventing enforcement of Act 436 — the

state is free to take other action to establish reasonable marriage license requirements that do not

have the unconstitutional and discriminatory effects of Act 436.

Even if Defendants do identify an alleged injury, the Court should look upon it with

skepticism.  As the Buck court noted, "whatever harm felt by [the defendant charged with

issuing marriage licenses] surely is not as great as the harm experienced by Plaintiffs in being

deprived of their fundamental constitutional right to marry."  485 F. Supp. 2d at 586.

24

## V.   THE PUBLIC INTEREST WILL
## BE SERVED BY A PRELIMINARY INJUNCTION

It is always in the public interest to prevent the violation of a party's constitutional rights.

E.g., Texans for Free Enter. v. Texas Ethics Comm'n, 732 F.3d 535, 539 (5th Cir. 2013); Awad

v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012); G & V Lounge, Inc. v. Mich. Liquor Control

Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994).  This includes the fundamental right to marriage

and the right to be free from discriminatory classifications.  Buck, 485 F. Supp. 2d at 586-87.

The Plaintiff therefore satisfies the final element of the preliminary injunction analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be

granted.

Dated:  January 17, 2017                              Respectfully submitted,

                                                      /s/ Mary Yanik

Mary Yanik, Trial Attorney                                       Lisa Gilford*
(LA Bar No. 36973)                                      Stacy R. Horth-Neubert*
Jennifer J. Rosenbaum                                       Maximillian Hirsch*
(LA Bar No. 31946)                                          Jeffery B. White*
NEW ORLEANS WORKERS'                      SKADDEN, ARPS SLATE, MEAGHER &
CENTER FOR RACIAL JUSTICE                                      FLOM LLP
217 N. Prieur St                               300 South Grand Avenue, Suite 3400
New Orleans, LA 70112                                   Los Angeles, CA 90026
T: (504) 309-5165                                          T: (213) 687-5000
myanik@nowcrj.org                                     lisa.gilford@skadden.com
jjrosenbaum@nowcrj.org                            stacy.horth-neubert@skadden.com
                                                 maximillian.hirsch@skadden.com
                                                    jeffery.white@skadden.com

Karen C. Tumlin*
Nora A. Preciado*
Alvaro M. Huerta*                                       Marley Ann Brumme*
NATIONAL IMMIGRATION LAW               SKADDEN, ARPS, SLATE, MEAGHER &
CENTER                                                         FLOM LLP
3435 Wilshire Boulevard, Suite 1600                       500 Boylston Street
Los Angeles, CA 90010                                    Boston, MA 02116
T: (213) 639-3900                                          T: (617) 573-4800
tumlin@nilc.org                                      marley.brumme@skadden.com
preciado@nilc.org
huerta@nilc.org

                                                        *Admitted pro hac vice

---

**CERTIFICATE OF SERVICE**

In accordance with L.R. 5.4, I hereby certify that on this day,
copies of the foregoing have been served on all parties, or their
attorneys, via the court's CM/ECF system or by mail.

Dated:  January 17, 2017                                    25

/s Mary Yanik
Mary Yanik