```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

VIET ANH VO                                    CIVIL ACTION

VERSUS                                         NO. 16-15639

REBEKAH E. GEE,                                SECTION "B"(5)
SECRETARY OF THE DEPARTMENT
OF HEALTH, ET AL
```

## OPINION

Before the court are Defendant Perret's "Motion to Transfer Pursuant to 28 U.S.C section 1404(a)" (Rec. Doc. 50), Plaintiff's "Memorandum in Support of Plaintiff's Opposition to Defendant Louis J. Perret's Motion to Transfer Venue" (Rec. Doc. 61), Defendants Broussard and Thibodeaux's "Motion to Transfer Pursuant to 28 U.S.C section 1404(a)"( Rec. Doc. 48) and Plaintiff's "Memorandum in Support of Plaintiff's Opposition to Defendants' Diane Meaux Broussard and Michael Thibodeaux's Motion to Transfer Venue" (Rec. Doc. 62), Defendants Broussard and Thibodeaux's "Rule 12 (b)(6) Motion to Dismiss" (Rec. Doc. 47), Plaintiff's "Memorandum in Support of Plaintiff's Opposition to Defendants' Broussard and Thibodeaux's Rule 12(b)(6) Motion to Dismiss" (Rec. Doc. 59), Defendant Perret's "Rule 12(b)(6) Motion to Dismiss" (Rec. Doc. 49), Plaintiff's "Memorandum in Support of Plaintiff's Opposition to Defendant Perret's Rule 12(b)(6) Motion to Dismiss" (Rec. Doc. 60),"Plaintiff's Motion for Preliminary Injunction"

1

(Rec. Doc 37), Defendants Gee and George's "Incorporated Pre-Trial Brief and Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction" (Rec. Doc. 55), Defendant Perret's "Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction" (Rec Doc. 57), "Reply Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction" (Rec. Doc. 66), "Brief of Constitutional Accountability Center as Amicus Curiae in Support of Plaintiff's Motion for Preliminary Injunction" (Rec. Doc. 43), "Brief of Amicus Curiae the American Civil Liberties Union Foundation of Louisiana in Support of Plaintiff's Motion for Preliminary Injunction" (Rec. Doc. 44), "Brief of Amici Curiae National Center for Lesbian Rights, GLBTQ Legal Advocates & Defenders and LAMBDA Legal in Support of Plaintiff's Motion for Preliminary Injunction" (Rec. Doc. 45). For the reasons set forth below, **IT IS ORDERED** that Defendants' Motions to Transfer and Motions to Dismiss are **DENIED. IT IS FURTHER ORDERED** that the Motion for Preliminary Injunction is **GRANTED.**

I. **FACTS AND PROCEDURAL HISTORY**

The Plaintiff has brought a complaint for declaratory and injunctive relief against Defendant Rebekah Gee, the Secretary of the Department of Health and Hospitals for the State of Louisiana, Defendant Devin George, State Registrar and Director of the Office of Vital Records, Defendant Michael Thibodeaux, Clerk of Court for Iberia Parish, Defendant Diane Meaux Broussard, Clerk of Court for

Vermilion Parish and Defendant Louis J. Perret, Clerk of Court for Lafayette Parish.

Plaintiff, Viet "Victor" Anh Vo was born in an Indonesian refugee camp after his parents (both Vietnamese nationals) fled Vietnam as refugees (Rec. Doc. 1). Given this circumstance, Indonesian and Vietnamese authorities have never recognized his birth and consequently he has never been issued a birth certificate from a government entity (Rec. Doc. 1). Plaintiff has resided in Louisiana since he was three months old and became a naturalized citizen when he was eight years old (Rec. Doc. 1). In 2016, Plaintiff and his girlfriend (a fellow United States citizen) decided to get married and applied for a marriage license from the state of Louisiana (Rec. Doc. 1).

Plaintiff was denied a marriage license pursuant to Act 436 which requires that all applicants for a marriage license provide a certified birth certificate, a valid and unexpired passport, or an unexpired visa accompanied by a Form I-94 (Rec. Doc. 1). Act 436 has a waiver of the birth certificate requirement but in order to qualify for the waiver an applicant must be a U.S. citizen that was born in the United States or one of its territories. Plaintiff was born outside of the United States and is naturalized citizen and therefore did not qualify for the waiver (Rec. Doc. 1). Plaintiff provided other official documents to the Clerk of Court including a social security number and a Louisiana state driver's

3

license, but without a birth certificate as required by Act 436, the state of Louisiana refused to issue him a marriage license (Rec. Doc. 1).

## II. FACTUAL AND LEGAL FINDINGS

### A. Defendants' Motions to Transfer

Defendants Brossard, Thibodeaux and Perret jointly bring a motion to transfer pursuant to 28 U.S.C. section 1404(a). Under the statute venue may be transferred to any other district where the action might have been brought for "the convenience of the parties of witnesses and in the interest of justice." *Id.* However, "the plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed. The burden of proof in a motion to transfer is on the moving party. Unless the balance of factors strongly favors the moving party, the plaintiff's choice of forum generally should not be disturbed." *Carpenter v. Parker Drilling Offshore United States*, Case No. 05-365, 2005 U.S. Dist. LEXIS 11979, at*5 (E.D. La. June 16, 2005).

In the Fifth Circuit the court looks at eight primary factors when determining if a transfer is appropriate. *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008). There are four private interest factors and four public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of

4

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The four public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* None of the factors can be said to be of dispositive weight. *Id.* Nonetheless, in analyzing the eight factors collectively, this Court finds that the Defendants' motion for a transfer is not appropriate.

1. **The relative ease of access to sources of proof**

The instant legal dispute does not require intensive fact discovery and therefore access to sources of proof will not be a significant factor in this case. Both the Plaintiff and Defendants agree that the Plaintiff was denied a marriage license because of Act 436. The controversy is entirely legal and therefore this factor does not weigh in the favor of the Defendants motion to transfer venue.

2. **The availability of compulsory process to secure the attendance of witnesses**

The Defendants argue that most of, if not all, of the witnesses in this case are located in the Western District of Louisiana and

therefore in cities beyond the 100-mile subpoena power of this Court. They further argue that for an unwilling witness, this could be detrimental to the Defendants' case. However, as Plaintiff explains, a person can be compelled to testify anywhere in the state where he or she resides or conducts business if the person is a "party or a party's officer." Fed. R. Civ. P. 45(c)(1)(B)(i). All of the witnesses in this case reside and conduct business in Louisiana and therefore hailing them into court will not be an issue. Furthermore, this case does not hinge upon disputed facts but whether or not the law itself is unconstitutional. Therefore witnesses will not be a large concern as this case proceeds towards trial. This factor weighs against the Defendants' motion to transfer venue.

**3. The cost of attendance for willing witnesses**

Defendants argue that the costs for witnesses would be significant if the case is not transferred to the Western District. However, the Defendants have not explained with specificity why the Eastern District would be a burden and what key witnesses would be impacted. In a recent Eastern District case a Defendant similarly argued that "the costs for willing witnesses from Lake Charles to attend proceedings in Lake Charles would be minimal, but costs for their travel 205 miles to New Orleans would be significant." *Broussard v. First Tower Loan, LLC*, 135 F. Supp. 3d 540, 547(E.D. La. 2015). However the court ruled that "this

allegation is not sufficient to meet the movant's burden. Thus, this factor supports maintaining venue in the Eastern District." *Id.* This Court follows this logic as well and given the Defendants' lack of specificity, this factor also weighs in favor of denying the motion to transfer.

4. **All other practical factors that make trial of a case easy, expeditious and inexpensive**

There is no indication that a transfer will have any impact on the trial of this case. This factor is neutral and therefore does not weigh in favor of the Defendants' motion to transfer.

5. **The administrative difficulties flowing from court congestion**

Defendants state that there are no known differences between the Western District and the Eastern District regarding court congestion. Plaintiff however cites compelling evidence from the Administrative Office of the United States Court. The Western District has a significantly longer resolution timeline than the Eastern District. This factor weighs heavily against a transfer in venue as it would lead to a protracted litigation schedule.

6. **The local interest in having localized interests decided at home**

The Defendants contend that because the three clerks reside in the Western District that the case should be transferred there because of a particularized local interest. However, as the Plaintiff points out, the actions of these clerks have nothing to

7

do with their residence in the Western District. They are merely complying with the plain language of a statute that is uniformly enforced across the entire state of Louisiana. This factor does not weigh in favor of granting the Defendants' motion to transfer.

7. **The familiarity of the forum with the law that will govern the case**

Judges in the Eastern District and the Western District are both familiar with the forum law and therefore this factor does not support the Defendant's motion to transfer.

8. **The avoidance of unnecessary problems of conflict of law or in the application of foreign law**

This Court does not find that there are any issues regarding conflict of law between the Eastern and Western Districts. This factor does not weigh in favor of the Defendants' motion. None of the factors that the Fifth Circuit analyzes convinces this Court that the matter should be transferred to the Western District of Louisiana.

   B. **Defendants' Motions to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Kaiser*

*Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982)).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has

9

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Defendants Brossard, Thibodeaux and Perret jointly bring a motion to dismiss on the basis that they lack *Monell* liability. The Defendants argues that under the Supreme Court's holding in *Monell* that they can only be sued if they were a moving force of the alleged unlawful constitutional deprivation at issue. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The clerks of the various parishes in the instant litigation argue that there is no allegation that the clerks engaged in any unlawful conduct or any unconstitutional custom, policy, or procedure that would permit *Monell* liability. In their motion to dismiss the clerks argue that even though they are responsible for the actual implementation of Act's 436's requirements, they had no choice but to follow the mandates of state law. In other words, the clerks argue that they were "just doing their job."

The Plaintiff argues, and this Court agrees, that this is precisely why these clerks are appropriate parties to the instant lawsuit. The Fifth Circuit explained, "the State cannot dissociate

10

itself from actions taken under its laws by labeling those it commands to act as local officials. A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy. It may be possible for the officer to wear both state and county hats at the same time, but when a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official." *Echols v. Parker*, 909 F.2d 795, 801(5th Cir. 1990).

Furthermore, as Plaintiff points out, the *Monell* requirements that the defendants reference apply where a municipal official acts in a local capacity, not where the official preforms as a state actor. *Cain v. City of New Orleans*, Case No. 15-4479, 2017 U.S. Dist. LEXIS 15124, at*53 (E.D. La. Feb. 3, 2017). The appropriate standard that should be used in the instant matter is the one found in *Ex Parte Young. Ex parte Young,* 209 U.S. 123, 155-156 (1908); *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001). This standard is appropriate because (1) the clerks are acting as state officials when they enforce Act 436; (2) the constitutional violations are ongoing; and (3) the Plaintiff seeks injunctive relief. *Cain v. City of New Orleans*, U.S. Dist. LEXIS 15124, at*52-53. Other Circuits have also found liability under *Ex Parte Young* to be appropriate in similar factual scenarios. *Bostic v. Schaefer*, 760 F.3d 352, 371 n.3. (4th Cir. 2014)(City clerk that

issued marriage licenses was a proper defendant under *Ex Parte Young* for suit challenging state law). Given that the Defendants are still liable under the relevant standard, this Court finds their motions to dismiss to be inappropriate. Nonetheless, given the factual allegations in the complaint this Court finds that it may be appropriate to amend the complaint to include 42 U.S. Code § 1983 jurisdictional claims. Any amendments to the complaint should be filed within 14 days from the issuance of this order.

### C. Plaintiff's Motion for Preliminary Injunction

A threshold issue in the Defendant's Opposition to the Motion for Preliminary Injunction is that the Plaintiff lacks standing. The Defendants contend that the particular facts of this case, the denial of a marriage license, do not confer article III standing to the Plaintiff. Nonetheless, in the Fifth Circuit, the very act of denying a marriage license to a plaintiff in contravention of their constitutional rights has been held to constitute article III standing. *De Leon v. Perry*, 975 F. Supp. 2d 632, 646 (W.D. Tex. 2014). The Plaintiff in the instant matter was denied a marriage license on three separate occasions by each of the Clerk Defendants. This Court finds these facts sufficient to establish article III standing.

To secure a preliminary injunction a Plaintiff must establish: (1) a substantial likelihood of success on the merits ;(2) a substantial threat of irreparable injury if the injunction

is not issued; (3) that the threated injury if the injunction is denied outweighs any harm that will result is the injunction is granted; and (4) that the grant of the injunction will not disserve the public interest. *Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014).

### 1. Likelihood of Success on the Merits

In the Fifth Circuit in order "to assess the likelihood of success on the merits, we look to standards provided by the substantive law." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016). Furthermore, "to show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013). In the instant matter Plaintiff has demonstrated that there is a likelihood of success on the merits. Plaintiff has established a prima facie case that the effects of the statute are likely unconstitutional under the Equal Protect Clause since it adversely treats naturalized citizens differently from citizens born in the United States. Specifically, the birth certificate provisions impermissibly discriminate against the Plaintiff based on his national origin and deny him, a naturalized U.S. citizen, the fundamental right to marry.

The Equal Protection Clause protects all individuals from state discrimination. *Plyer v. Doe*, 457 U.S. 202, 210 (1982). The

13

Supreme Court has clarified that "these provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws. *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Even though states retain a broad power to classify individuals under an Equal Protection analysis, "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." *Graham v. Richardson*, 403 U.S. 365, 372 (1971).

Classifications, such as the one made by the state of Louisiana pursuant to Act 436 "must be analyzed by a reviewing court under strict scrutiny, that is, such classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 105 (2001). The birth certificate provisions that the Louisiana legislature enacted creates adverse classifications that distinguish between United States citizens on the basis of their national origin. If the Plaintiff was born in the United States and lacked a birth certification he could apply for the waiver and the state of Louisiana would grant him a marriage license. However, because the Plaintiff was born overseas and then became a naturalized citizen he is ineligible to apply for the waiver. The state of Louisiana would have to demonstrate

that these classifications further compelling governmental interest that justify treating the U.S. citizen Plaintiff differently from other U.S. citizens merely because of where he was born.

In addition, the Plaintiff has established a prima facie case that Act 436 is unconstitutional by denying him a fundamental right, the right to marriage. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602-2603 (2015). Even though states may impose reasonable regulations on marriage, the Supreme Court has applied a strict scrutiny test when regulations "interfere directly and substantially with the right to marry." *Zablocki v. Redhail*, 434 U.S. 374, 387 (1978). The current birth certificate provisions completely bar the Plaintiff from obtaining a marriage license. Given the heighted level of scrutiny that classifications based on national origin require, this Court finds that the Plaintiff has a likelihood of success on the merits of his equal protection claims and therefore satisfies the first requirement of the Plaintiff's motion for preliminary injunction.

### 2. Threat of Irreparable Injury

In order to meet this requirement for the preliminary injunction the Plaintiff must demonstrate that he is "likely to suffer irreparable harm, that is, harm for which there is no adequate remedy at law." *Daniels Health Scis., LLC*, 710 F.3d 579, 585 (internal quotations omitted). The Fifth Circuit clarified and

explained, "an injury is irreparable only if it cannot be undone through monetary remedies." *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338, (5th Cir. 1981) (internal quotations omitted). Under Louisiana state law the Plaintiff is currently being denied the right to marriage. There is no monetary award that can provide him that right and therefore he is likely to suffer irreparable harm. In addition, the Fifth Circuit has held that the denial of constitutional rights "for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center*, 661 F.2d 328, 338. The Plaintiff has been denied the right to marry since early 2016. Act 436's deprivation of the Plaintiff's fundamental right to marriage satisfies the requirement that the Plaintiff face the threat of irreparable harm.

### 3. Weighing of the harms

In order to obtain a preliminary injunction the Plaintiff must demonstrate that the threatened injuries outweigh any damage that the injunction will cause the defendant. *Sells,* 750 F.3d 478, 480. This Court finds that the balancing analysis weighs heavily in the favor of the Plaintiff. The state of Louisiana is not harmed by having to issue a marriage license to, in this case, a United States citizen who merely lacks a birth certificate due to circumstances beyond his control. Louisiana's enjoinment from enforcing a likely unconstitutional law does not outweigh the

16

Plaintiff's fundamental right to marriage. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013).

### 4. Whether the injunction will disserve the public interest

The Fifth Circuit has held that injunctions protecting constitutional freedoms are always in the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539, (5th Cir. 2013). In the instant matter the preliminary injunction would protect the fundamental right to marriage and the right to be free from unconstitutional discriminatory classifications based on national origin. Consequently, this factor also weighs in favor of the Plaintiff.

The Plaintiff's Motion for Preliminary Injunction is appropriate and applies to all individuals whose constitutional rights would be curtailed by Act 436. As a nation we should welcome all United States citizens, born in the United States or naturalized, to enjoy all of the rights and privileges that are bestowed upon them through their citizenship. These rights should not be abridged just because a United States citizen was naturalized instead of being born on our soil.

New Orleans, Louisiana, this 23rd day of March, 2017.

SENIOR UNITED STATES DISTRICT JUDGE