## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Viet Anh Vo<br><br>                    Plaintiff,<br><br>      v.<br><br>Rebekah E. Gee, Secretary of the Department of Health; Devin George, State Registrar; Michael Thibodeaux, Iberia Parish Clerk; Diane Meaux Broussard, Vermilion Parish Clerk; Louis J. Perret, Lafayette Parish Clerk;<br><br>                    Defendants. | CASE NO. 16-cv-15639-ILRL-MBN |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
## DECLARATORY JUDGMENT, AND PERMANENT INJUNCTION

Mary Yanik, Trial Attorney
(LA Bar No. 36973)
Jennifer J. Rosenbaum
(LA Bar No. 31946)
*Admitted to practice in the Eastern*
*District of Louisiana*
NEW ORLEANS WORKERS'
  CENTER FOR RACIAL JUSTICE
217 N. Prieur St
New Orleans, LA 70112
T: (504) 309-5165
*myanik@nowcrj.org*
*jjrosenbaum@nowcrj.org*


Karen C. Tumlin*
Nora A. Preciado*
Alvaro M. Huerta*
NATIONAL IMMIGRATION
  LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
T: (213) 639-3900
*tumlin@nilc.org*
*preciado@nilc.org*
*huerta@nilc.org*


*Attorneys for Plaintiff*

Lisa Gilford*
Stacy R. Horth-Neubert*
Maximillian Hirsch*
Jeffery B. White*
SKADDEN, ARPS, SLATE,
  MEAGHER &
  FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90026
T: (213) 687-5000
*lisa.gilford@skadden.com*
*stacy.horth-neubert@skadden.com*
*maximillian.hirsch@skadden.com*
*jeffery.white@skadden.com*


Marley Ann Brumme*
SKADDEN, ARPS, SLATE,
  MEAGHER &
  FLOM LLP
500 Boylston Street
Boston, MA 02116
T: (617) 573-4800
*marley.brumme@skadden.com*


*Admitted pro hac vice*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ACT 436 AND THE UNDISPUTED FACTS ...................................................2

    A.    Act 436 Intentionally Interferes With The Rights Of Foreign-Born Marriage License Applicants ................................................2

    B.    Mr. Vo Was Denied A Marriage License Because Of Act 436.............................4

    C.    The District Court Granted Plaintiff's Motion For A Preliminary Injunction, Enjoining Enforcement Of Act 436's Discriminatory Provisions................................................5

LEGAL STANDARD ......................................................................................6

ARGUMENT .................................................................................................8

I.    THE BIRTH CERTIFICATE PROVISIONS VIOLATE  THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT...........................................................9

    A.    The Birth Certificate Provisions Unconstitutionally Deny  Mr. Vo The Equal Protection Of The Law Based On His National Origin..............................10

    B.    The Birth Certificate Provisions Unconstitutionally Deny Mr. Vo The Fundamental Right To Marry ................................................12

    C.    The Fundamental Right To Marry Under The Equal Protection And Due Process Clauses Applies Regardless Of A Person's National Origin Or Alienage ................................................13

II.    The Birth Certificate Provisions Are Not Narrowly Tailored To Serve A Compelling State Interest................................................14

III.    A PERMANENT INJUNCTION WILL PREVENT IRREPARABLE  INJURY TO FOREIGN-BORN MARRIAGE LICENSE APPLICANTS,  WHICH OUTWEIGHS ANY POSSIBLE DAMAGE TO DEFENDANTS, AND  AN INJUNCTION ALSO SERVES THE PUBLIC INTEREST...........................................17

    A.    Without A Permanent Injunction, Defendants  Will Cause Irreparable Injury In Violating The  Constitutional Rights Of Foreign-Born Marriage License Applicants................................................18

    B.    The Balance Of Harms Favors Granting A Permanent Injunction ......................19

    C.    A Permanent Injunction Serves the Public Interest .............................20

CONCLUSION................................................................................................20

## **TABLE OF AUTHORITIES**

### CASES

*Adarand Constructors, Inc. v. Pena*,
    515 U.S. 200 (1995)..................................................................................14

*Allied Marketing Group Inc. v. CDL Marketing, Inc.*,
    828 F.2d 806 (5th Cir. 1989) ......................................................................6

*Amoco Production Co. v. Village of Gambell*,
    480 U.S. 531 (1987)....................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................................7

*Awad* v. Ziriax,
    670 F.3d 1111 (10th Cir. 2012) ................................................................20

*Bassett v. Snyder*,
    951 F. Supp. 2d 939 (E.D. Mich. 2013)....................................................18

*Bishop v. United States*,
    962 F. Supp. 2d 1252 (N.D. Okla. 2014), *aff'd sub nom.*, *Bishop v. Smith*, 760
    F.3d 1070 (10th Cir. 2014) .........................................................................9

*Borskey v. Medtronics, Inc.*,
    No. CIV. A. 94–2302, 1994 WL 585676 (E.D. La. Oct. 24, 1994)...............8

*Bostic v. Shaefer*,
    760 F.3d 352 (4th Cir. 2014) ......................................................................9

*Brazos Valley Coalition for Life, Inc. v. City of Bryan*,
    421 F.3d 314 (5th Cir. 2005) ......................................................................8

*Buck v. Stankovic*,
    485 F. Supp. 2d 576 (M.D. Pa. 2007) ......................................13, 14, 15, 16, 17, 18, 19, 20

*Buck v. Stankovic*,
    No. 3:07-CV-0717, 2008 WL 4072656 (M.D. Pa. Aug. 27, 2008) .................14

*Burns v. Hickenlooper*,
    No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014) ....18

*Campaign for Southern Equality v. Bryant*,
    64 F. Supp. 3d 906 (S.D. Miss. 2014) ...............................................18, 19

*Causeway Medical Suite v. Foster*,
    43 F. Supp. 2d 604 (E.D. La. 1999)...........................................................6

*City of Alexandria v. Cleco Corp.*,
    735 F. Supp. 2d 465 (W.D. La. 2010)........................................................8

*Cleveland Board of Education v. Lafleur*,
    414 U.S. 632 (1974)..................................................................................12

*Condon v. Haley*,
    21 F. Supp. 3d 572 (D.S.C. 2014)..............................................................9

*De Leon v. Perry*,
    975 F. Supp. 2d 632 (W.D. Tex. 2014), *aff'd sub nom.*, *De Leon v. Abbot*, 791
    F.3d 619 (5th Cir. 2015) ........................................................................18, 19

*Deerfield Medical Center v. Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) ..............................................................................18

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) ..............................................................................7

*G & V Lounge, Inc. v. Mich. Liquor Control* Comm'n,
    23 F.3d 1071 (6th Cir. 1994) ..............................................................................20

*Graham v. Richardson*,
    403 U.S. 365 (1971)........................................................................................6, 10

*Greyhound Lines, Inc. v. City of New Orleans*,
    29 F. Supp. 2d 339 (E.D. La. 1998)........................................................................7

*Hamby v. Parnell*,
    56 F. Supp. 3d 1056 (D. Alaska 2014) ..................................................................9

*Henderson v. Adams*,
    209 F. Supp. 3d 1059 (S.D. Ind. 2016)..........................................................15, 16

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013), *aff'd*, 134 S. Ct. 2751 (2014)..........................19

*Landry v. Air Line Pilots Ass'n*,
    892 F.2d 1238 (5th Cir. 1990) ..............................................................................7

*Latta v. Otter*,
    19 F. Supp. 3d 1054 (D. Idaho 2014), *aff'd*, 771 F.3d 456 (9th Cir. 2014)........9

*Lee v. Orr*,
    No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) ...............................9

*Lionhart v. Foster*,
    100 F. Supp. 2d 383 (E.D. La. 1999)....................................................................6

*Loving v. Virginia*,
    388 U.S. 1 (1967)........................................................................10, 11, 12, 14

*Manwani v. U.S. Department of Justice*,
    736 F. Supp. 1367 (W.D.N.C. 1990) ............................................................14, 17

*Mapes v. United States*,
    576 F.2d 896 (Ct. Cl. 1978) ..............................................................................13

*Marie v. Moser*,
    65 F. Supp. 3d 1175 (D. Kan. 2014)....................................................................18

*McGee v. Cole*,
    66 F. Supp. 3d 747 (S.D. W. Va. 2014)................................................................9

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015)........................................................................................12

*Oyama v. California*,
    332 U.S. 633 (1948) ........................................................................................10

*Plyler v. Doe*,
    457 U.S. 202 (1982) ........................................................................................10

*Rosas v. U.S. Small Business Administration*,
    964 F.2d 351 (5th Cir. 1992) ...........................................................................8

*Searcy v. Strange*,
    81 F. Supp. 3d 1285 (S.D. Ala. 2015) ............................................................9

*Skinner v. Oklahoma*,
    316 U.S. 535 (1942) ........................................................................................12

*Takahashi v. Fish & Game Commission*,
    334 U.S. 410 (1948) ........................................................................................11

*Turner v. Safley*,
    482 U.S. 78 (1987) ..........................................................................................12

*United States v. Carolene Products Co.*,
    304 U.S. 144 (1938) ........................................................................................11

*United States v. Virginia*,
    518 U.S. 515 (1996) ........................................................................................15

*United States v. Windsor*,
    133 S. Ct. 2675 (2013) ...............................................................................12, 19

*Whitewood v. Wolf*,
    992 F. Supp. 2d 410 (M.D. Pa. 2014) .............................................................9

*Wolf v . Walker*,
    986 F. Supp. 2d 982 (W.D. Wisc. 2014) .........................................................9

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886) ........................................................................................10

*Zablocki v. Redhail*,
    434 U.S. 374 (1978) ...................................................................................11, 12

## STATUTES, RULES, AND OTHER AUTHORITIES

42 U.S.C. § 1983 ..........................................................................................................5

La. Stat. Ann. § 9:205 ..................................................................................................2

La. Stat. Ann. § 9:221 ..................................................................................................2

La. Stat. Ann. § 9:224 .............................................................................................3, 17

La. Stat. Ann. § 9:225 ..................................................................................................2

La. Stat. Ann. § 9:226 .............................................................................................3, 11

La. Stat. Ann. § 9:227 ..................................................................................................3

La. Stat. Ann. § 9:228 .............................................................................................3, 11

Fed. R. Civ. P. 56(a) .....................................................................................................7

Fed. R. Civ. P. 65(a)(2) ................................................................................................7

## PRELIMINARY STATEMENT

As the Court recognized in its Order granting a preliminary injunction, Louisiana's marriage license law impermissibly discriminates against Plaintiff Viet "Victor" Anh Vo and denies him and others similarly situated the fundamental right of marriage based on their national origin, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Act Number 436 ("Act 436") facially discriminates against certain Louisiana residents, principally those born outside of the United States, whatever their immigration status — as well as their intended spouses, wherever born and whatever status — who effectively no longer enjoy the right to marry because of cumbersome, and sometimes impossible, documentary requirements. Because of Act 436, Plaintiff was denied a marriage license by three Parishes.

These are the undisputed facts: after months of careful planning, Mr. Vo and his fiancée were set to marry in early 2016. In advance of their wedding, the couple attempted to obtain a marriage license from the offices of each of Defendants Broussard, Perret, and Thibodeaux, Clerks for Vermillion, Lafayette, and Iberia Parishes, respectively. Though he provided a Social Security number and a Louisiana state driver's license verifying his identity, Mr. Vo and his fiancée were denied a marriage license because Mr. Vo, who was born in an Indonesian refugee camp before emigrating to the United States as a child, could not provide a birth certificate. The couple, greatly disappointed, proceeded to hold a sacramental marriage in their local Catholic Church. This marriage is not legally recognized by Defendants or the State of Louisiana.

As this Court has already recognized, Mr. Vo's inability to obtain a marriage license is the direct result of the requirements of Act 436, which amended Louisiana's marriage law to prevent certain individuals from exercising their fundamental right to marry the person of their choosing. The affected individuals are principally persons born outside of the United States — and, by default, those who seek to marry them. Among other things, the Act requires that all

applicants for a marriage license present a certified copy of their birth certificate, without providing any alternate mechanism for those born outside the United States.

This Court has already determined that Act 436 violates Mr. Vo's fundamental right to marry and runs afoul of the Equal Protection Clause. Because there are no material facts in dispute, Mr. Vo now seeks summary judgment in order to obtain a declaratory judgement and permanent injunction against Act 436's enforcement.

**ACT 436 AND THE UNDISPUTED FACTS**

Act 436 facially discriminates against certain Louisiana residents, principally those born outside of the United States, whatever their immigration status — as well as their intended spouses, wherever born, whatever status — who effectively no longer enjoy the right to marry in the state because of cumbersome, and sometimes impossible, documentary requirements. Because of Act 436, Plaintiff was denied a marriage license by three separate Parishes.

A. **Act 436 Intentionally Interferes
With The Rights Of Foreign-Born Marriage License Applicants**

Louisiana requires individuals desiring to marry to first obtain a marriage license. La. Stat. Ann. § 9:205 (2008). In Orleans Parish, marriage licenses are issued by the State Registrar of Vital Records or a judge of the city court; in all other parishes, they are issued by the parish clerk of court. *Id.* § 9:221.

Act 436 amended a number of the documentary and other requirements for obtaining a marriage license in Louisiana. Most relevant here, Act 436 significantly altered the requirements and waiver procedures for applicants to provide a birth certificate. Both parties must now provide a certified copy of their birth certificate. La. Stat. Ann. § 9:225 (Supp. 2017).

If either party was born outside of the United States, that party must submit a birth certificate under the seal of the United States or ***all*** of the following:

2

- "A copy of the person's birth certificate under the raised seal or stamp of the vital statistics registration authority of the person's place of birth[;]" ***and***

- "A valid and unexpired passport or an unexpired visa accompanied by a Form I-94 issued by the United States, verifying that the applicant is lawfully in the United States."

*Id.* § 9:226(C)(1)(a), (2) (Supp. 2017) (the "Birth Certificate Requirement" and "Passport Requirement," respectively).  To be clear, if a marriage license applicant was not born in the United States, he or she must not only provide a birth certificate, but further documentation: a valid passport or a visa and Form I-94.  U.S.-born persons are ***not subject*** to this additional documentary requirement — for them, the birth certificate alone will suffice.

Prior to Act 436, a waiver process existed for ***any*** individual who could not produce a birth certificate when attempting to obtain a marriage license, wherever born.  *Id.* §§ 9:227-28 (Supp. 2017).  After the passage of Act 436, however, the waiver procedure is available to ***only*** U.S.-born citizens of the United States.  Upon "competent evidence that the applicant ***was born in any state or territory of the United States***," an applicant may obtain an order from a judge or justice of the peace ordering that the issuing official issue a marriage license without presentation of a birth certificate.  *Id.* § 9:228(A), (B) (Supp. 2017) (emphasis added) (the "Waiver Provision"; together with the Birth Certificate Requirement and the Passport Requirement, the "Birth Certificate Provisions").  No similar provision exists for a foreign-born applicant.[1]

Act 436 thus treats foreign-born marriage applicants differently in two ways with respect to the requirement that he or she provide a birth certificate.  The foreign-born applicant, like Mr. Vo:  (i) must provide extra documentation in the form of either a passport or visa and Form I-94; and (ii) is ineligible to have the birth certificate requirement waived.

---

[1]     Additionally, despite these heightened and discriminatory burdens, there is no mechanism to appeal the denial of a marriage license.  *See generally* La. Stat. Ann. §§ 9:224-28 (Supp. 2017).

**B.**     **Mr. Vo Was Denied A Marriage License Because Of Act 436**

Plaintiff Viet "Victor" Anh Vo is a derivative United States citizen[2] who resides in Lafayette, Louisiana.  (Plaintiff's Local Rule 56.1 Statement Of Material Facts As To Which There Is No Genuine Issue Of Fact To Be Tried ¶ 1 (hereinafter, "SMF").)  Mr. Vo was born on in an Indonesian refugee camp after his parents fled Vietnam due to civil strife.  (*Id.* ¶ 2.)  When Mr. Vo was three months old, he and his parents moved to Louisiana as refugees.  (*Id.* ¶ 3.)  Neither Indonesia nor Vietnam has ever officially recognized his birth.  (*Id.* ¶ 4.)

Two weeks prior to their wedding, Mr. Vo and his fiancée, Heather Pham, a U.S.-born citizen, attempted to obtain a marriage license at the office of Defendant Broussard, the Vermillion Parish Clerk.  (*Id.* ¶ 7.)  Despite the fact that Mr. Vo provided other official documents to establish his identity, including a Social Security number and a Louisiana state driver's license, the Vermillion Parish Clerk's office refused to approve Mr. Vo and Ms. Pham's marriage license application, based on the provisions of Act 436.  (*Id.* ¶ 8.)  Mr. Vo explained why he did not have a birth certificate and could not get one, to no avail.  (*Id.* ¶ 9.)

Mr. Vo and Ms. Pham called the office of Defendant Thibodeaux, Iberia Parish Clerk, and were told that they could not obtain a marriage license without presenting Mr. Vo's birth certificate.  (*Id.* ¶ 10.)  Mr. Vo and Ms. Pham attempted one last time to apply for a marriage license by visiting the offices of Defendant Perret, Lafayette Parish Clerk, but there too they were denied due to the birth certificate requirement.  (*Id.* ¶ 11.)  About three days before the

---

[2]     Derivative citizenship is distinct from naturalized citizenship.  Naturalization refers to the process by which a non-citizen may apply to become a citizen if he or she meets certain requirements.  Derivative citizenship occurs automatically by operation of law, without application or going through the naturalization process; it refers to the situation where a person acquires citizenship through the actions of their relatives and by meeting certain distinct requirements.  For example, like Mr. Vo, a child under the age of 18 automatically derives citizenship when a parent naturalizes.  8 U.S.C. § 1432.

wedding, they returned to the Vermillion Parish Clerk's office with a letter from their representative explaining why Mr. Vo did not have, and could not get, a birth certificate.  (*Id.* ¶ 12.)  They were again denied.  (*Id.*)

Mr. Vo and his fiancée are devastated and feel a loss of hope because they were denied the right to legally marry in their home state.  (*Id.* ¶ 13.)  Although they were able to obtain a sacramental marriage through their church, because their marriage is not legally recognized by their home state, the couple feel as though their wedding is fake.  They are embarrassed about having to explain to family and close friends that their marriage is not acknowledged by the state.  (*Id.* ¶ 14.)

Plaintiff thus brought this action, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for deprivation of his constitutional right to equal protection and due process under the Fourteenth Amendment's Equal Protection (Count I) and Due Process (Count II) Clauses.  (Am. Compl., Apr. 12, 2017, ECF No. 82 ¶¶ 1-58.)

C.    **The District Court Granted Plaintiff's Motion For A Preliminary Injunction, Enjoining Enforcement Of Act 436's Discriminatory Provisions**

On February 2, 2017, Plaintiff sought a preliminary injunction from the Court, which heard argument on the motion on March 22, 2017.  (ECF No. 34.)  On March 23, 2017, the Court granted Plaintiff's motion for a preliminary injunction, finding that all four of the factors required for entry of such an injunction were satisfied.  (ECF No. 77 at 12-17.)

As to Plaintiff's likelihood of success on the merits, the Court's Opinion stated that Act 436's Birth Certificate Provisions "impermissibly discriminate against the Plaintiff based on his national origin and deny him, a . . . U.S. citizen, the fundamental right to marry" in violation of the mandates of Equal Protection.  (*Id.* at 13.)

Because the Equal Protection Clause is "universal in [it]s application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, of nationality," the Court noted that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." (*Id.* at 13-14, quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) and *Graham v. Richardson*, 403 U.S. 365, 372 (1971).)  Here, because they "adversely treat[]" foreign-born persons in relation to U.S.-born persons, the Birth Certificate Provisions make a suspect national origin classification and thus must be subject to searching judicial inquiry. (*Id.* at 14.)  Applying strict scrutiny, the Court held that the Defendants could not demonstrate that Act 436 is a narrowly tailored measure serving a compelling governmental interest in order to justify treating Plaintiff differently solely on the basis of where he was born.  (*Id.* at 14-15.)

The preliminary injunction thus issued to enjoin further enforcement of Act 436, applicable to protect "all persons whose constitutional rights would be curtailed by Act 436." (*Id.* at 17.)

## LEGAL STANDARD

The standard for obtaining a permanent injunction "is essentially the same as for [obtaining] a preliminary injunction." *Lionhart v. Foster,* 100 F. Supp. 2d 383, 385 (E.D. La. 1999).  To obtain a permanent injunction, a plaintiff must demonstrate:  (i) actual success on the merits; (ii) a substantial threat of irreparable injury if the injunction is not granted; (iii) that the threatened injury outweighs any damage that may be caused to the opposing party; and (iv) that the public interest would not be disserved by a permanent injunction.  *Causeway Med. Suite v. Foster*, 43 F. Supp. 2d 604, 610 (E.D. La. 1999) (citing *Allied Mktg. Grp. Inc. v. CDL Mktg., Inc.*, 828 F.2d 806, 809 (5th Cir. 1989) and *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)), *aff'd*, 221 F.3d 811 (5th Cir. 2000).  Thus, the only difference in the

6

standard for a permanent injunction is that the movant seeking a permanent injunction must demonstrate actual success on the merits, rather than merely substantial likelihood of success, as is sufficient for a preliminary injunction.  *Greyhound Lines, Inc. v. City of New Orleans*, 29 F. Supp. 2d 339, 341 (E.D. La. 1998) (citing *Amoco Prod. Co.*, 480 U.S. at 546 n.12).

Plaintiff seeks to demonstrate actual success on the merits through this summary judgment motion based on uncontroverted evidence submitted in support of his motion for preliminary injunction.  *See* Fed. R. Civ. P. 65(a)(2) (stating that "evidence that is received on the [preliminary injunction] motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial").

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).

Where, as here, a motion for summary judgment involves only questions of law, the lack of discovery will not preclude the grant of summary judgment.  *Landry v. Air Line Pilots Ass'n*, 892 F.2d 1238, 1269 (5th Cir. 1990) (affirming summary judgment granted "with no discovery

having been taken," because "many of the issues raised by the summary judgment motions were purely legal[,]" and it is not apparent how additional discovery would advance Plaintiff's case.)[3]

Here, the parties and the Court agree that the issues presented by this suit involve pure questions of law.  (Ex. A (Tr. of 3/22/17 Hr'g.) at 8:21-9:12, 24:22-24.)   Summary judgment is thus appropriate notwithstanding the lack of discovery taken in this action.

## ARGUMENT

The Waiver Provision and Passport Requirement (Sections 226(C)(1)(a), 226(C)(2) and 228 of Louisiana's marriage laws as amended by Act 436; together, the "Birth Certificate Provisions") violate Mr. Vo's due process and equal protection rights under the Fourteenth Amendment by (i) denying him the equal protection of the law based on his national origin and (ii) precluding him from exercising his fundamental right to marry.  (Am. Compl. ¶¶ 46-55.) Specifically, because they make a suspect classification and substantially interfere with the exercise of a fundamental right, the Birth Certificate Provisions must meet strict scrutiny in order to survive Plaintiff's constitutional challenge.  Defendants bear the burden of establishing that Act 436 and its Birth Certificate Provisions satisfy this standard; they cannot and have not met

---

[3]     *See also Brazos Valley Coalition for Life, Inc. v. City of Bryan*, 421 F.3d 314, 327 (5th Cir. 2005) ("Appellants do not even attempt to show, nor can we readily imagine, how any additional discovery would have been necessary to answer these purely legal questions [regarding damages]."); *Rosas v. U.S. Small Bus. Admin.*, 964 F.2d 351, 359 (5th Cir. 1992) ("As the issues to be decided by the district court were purely legal in nature, the court did not abuse its discretion in deciding the summary judgment motion prior to completion of discovery."); *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 465, 471-72 (W.D. La. 2010) (granting partial summary judgment over opposing party's objection that no formal discovery had taken place because the motion involved purely legal questions which discovery could not "produce any facts upon which the motion may be denied."); *Borskey v. Medtronics, Inc.*, No. CIV. A. 94–2302, 1994 WL 585676, at *1 (E.D. La. Oct. 24, 1994) (granting a motion for summary judgment "based solely on the legal issue of whether plaintiffs' state-law claims are preempted by federal law," because "[t]his is a purely legal question raising no factual issues and requiring no discovery whatsoever").

that burden here.  Accordingly, summary judgment should be entered in Plaintiff's favor on

Counts I and II of the Amended Complaint.[4]

## I.   THE BIRTH CERTIFICATE PROVISIONS VIOLATE THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT

Where a state law makes a suspect classification and/or substantially interferes

with, or forecloses exercise of, the fundamental right to marriage, federal courts have routinely

granted plaintiffs' motions for summary judgment.  *E.g.*, *Bostic v. Shaefer*, 760 F.3d 352 (4th

Cir. 2014) (affirming summary judgment for plaintiffs on Equal Protection and Due Process

grounds where same-sex marriage ban precluded plaintiffs from exercising right to marry);

*Searcy v. Strange*, 81 F. Supp. 3d 1285 (S.D. Ala. 2015) (granting summary judgment to plaintiff

on Equal Protection and Due Process grounds where marriage statute interfered with the

fundamental right to marry); *Latta v. Otter*, 19 F. Supp. 3d 1054 (D. Idaho 2014), *aff'd*, 771 F.3d

456 (9th Cir. 2014) (same); *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014) (same);

*Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014), *aff'd sub nom.*, *Bishop v.

Smith*, 760 F.3d 1070 (10th Cir. 2014) (same on Equal Protection grounds); *Condon v. Haley*, 21

F. Supp. 3d 572 (D.S.C. 2014); *Wolf v . Walker*, 986 F. Supp. 2d 982 (W.D. Wisc. 2014); *McGee

v. Cole*, 66 F. Supp. 3d 747 (S.D. W. Va. 2014) (same); *Hamby v. Parnell*, 56 F. Supp. 3d 1056

(D. Alaska 2014) (same); *Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014)

(same).  The same result is warranted here.

---

[4]     Plaintiff's motion is based solely upon the legal grounds the Court previously addressed in its March 23, 2017 Opinion and order on Plaintiff's motion for preliminary injunction and the undisputed facts in this matter.  A third count of Plaintiff's Amended Complaint also challenges Act 436 as a violation of the Supremacy Clause, Article I, Section 8.  (ECF No. 82 ¶¶ 59-63.) Plaintiff reserves all rights with respect to this claim, including the right to seek summary judgment at a later date.

A.    **The Birth Certificate Provisions Unconstitutionally Deny**
     **Mr. Vo The Equal Protection Of The Law Based On His National Origin**

The Birth Certificate Provisions are unconstitutional under the Equal Protection Clause

because they:  (i) impermissibly discriminate on their face against certain residents of Louisiana,

like Mr. Vo, on the basis of national origin; and (ii) substantially interfere with the exercise of a

fundamental right.

The Equal Protection Clause applies to protect *all* persons from invidious state

discrimination:  "The Fourteenth Amendment provides that 'no State shall . . . deny to *any*

*person within its jurisdiction* the equal protection of the laws.'"  *Plyler v. Doe*, 457 U.S. 202, 210

(1982) (emphasis original).  "These provisions are universal in their application, to all persons

within the territorial jurisdiction, without regard to any differences of race, of color, or of

nationality; and the protection of the laws is a pledge of the protection of equal laws."  *Yick Wo*

*v. Hopkins*, 118 U.S. 356, 369 (1886).  The Clause thus "directs that 'all persons similarly

circumstanced shall be treated alike'" by the states, regardless of their place of birth.  *Plyler*, 457

U.S. at 216 (internal citation omitted).

While the states retain discretion to make some classifications, it is "presumptively

invidious" and inherently suspect for the states to make legislative classifications that

disadvantage a suspect class.  *Id.* at 216 (internal citations omitted); *Graham*, 403 U.S. at 371-72.

Accordingly, the Supreme Court "has consistently repudiated 'distinctions between citizens

solely because of their ancestry' as being 'odious to a free people whose institutions are founded

upon the doctrine of equality.'"  *Loving v. Virginia*, 388 U.S. 1, 11 (1967) (citation omitted).

A state therefore may not classify persons based on race, national origin, or alienage

without withstanding strict judicial scrutiny.  *E.g.*, *id.* ("At the very least, the Equal Protection

Clause demands that racial classifications . . . be subjected to the 'most rigid scrutiny.'"); *Oyama*

10

*v. California*, 332 U.S. 633, 645-46 (1948) (national origin); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 420 (1948) (state alienage classifications).  Nor may the state interfere with the exercise of a fundamental right without running afoul of the Equal Protection Clause. *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978).

As Justice Stone recognized in a still-apt and oft-cited footnote, "prejudice against discrete and insular minorities . . . tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry."  *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938).  Suspect legislative classifications in marriage laws have thus been unequivocally found to violate the Equal Protection Clause.  As the *Loving* Court held, "[t]here can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause."  388 U.S. at 12.  As the Court's Opinion on Plaintiff's motion for a preliminary injunction recognizes, the same is unquestionably true if the state discriminates on the basis of national origin.

The Birth Certificate Provisions explicitly make a suspect classification based on national origin.  (ECF No. 77 at 14-15.)  The Provisions discriminate against foreign-born persons in two distinct and burdensome ways:  (i)  persons not "born in a state or territory of the United States" are ineligible for a waiver allowing them to marry without providing a birth certificate; and (ii) such persons are subject to an added documentary requirement, not imposed on U.S.-born persons, to provide a valid passport or visa and Form I-94 *in addition to* their foreign birth certificate.  La. Stat. Ann. §§ 226(B)-(C), 228 (Supp. 2017).  Thus, unless Defendants can show that the Birth Certificate Provisions are "necessary to the accomplishment" of a compelling state

objective, they must similarly be struck down under the Equal Protection Clause. *Loving*, 388 U.S. at 11; ECF No. 77 at 14-15.

### B.   The Birth Certificate Provisions Unconstitutionally Deny Mr. Vo The Fundamental Right To Marry

The Birth Certificate Provisions are similarly infirm under both the Equal Protection and Due Process Clauses because they significantly interfere with — and, in fact, "completely bar" — Mr. Vo, his fiancée, and others like them from exercising the fundamental right to marry. (ECF No. 77 at 15.)

As this Court recognized in granting Plaintiff's motion for a preliminary injunction, marriage is a fundamental right protected by the Due Process and Equal Protection Clauses. ECF No. 77 at 15; *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015) ("The Court has reiterated that the right to marry is fundamental under the Due Process Clause.") (holding that same sex couples have the fundamental right to marry). *See also Turner v. Safley*, 482 U.S. 78, 94 (1987) ("[T]he decision to marry is a fundamental right") (striking down policy preventing inmates from marrying without substantial burden); *Zablocki*, 434 U.S. at 384 ("[T]he right to marry is of fundamental importance for all individuals."); *Cleveland Bd. of Educ. v. Lafleur*, 414 U.S. 632, 639-40 (1974) ("[F]reedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."); *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942) (noting marriage is "one of the basic civil rights of man").

Because of the importance of the right, while a state may impose reasonable regulations on marriage, as this Court recognized in its Opinion, it may not impose regulations that "interfere directly and substantially with the right to marry," unless they are narrowly tailored and necessary to address a compelling state interest, *i.e.*, they satisfy strict scrutiny. *Zablocki*, 434 U.S. at 387. *See also United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013) ("State laws

defining and regulating marriage, of course, must respect the constitutional rights of persons . . . ."); *Mapes v. United States*, 576 F.2d 896, 901 (Ct. Cl. 1978) (strict scrutiny applicable "where the obstacle to marriage is a direct one, i.e., one that operates to preclude marriage entirely. . ."); ECF No. 77 at 14.

Here, there is no doubt that Act 436 and its Birth Certificate Provisions directly and substantially interfere with Mr. Vo's right to marry; as the Court's prior Opinion recognized, they operate to "completely bar" him from exercising that right.  (ECF No. 77 at 15.)  Strict scrutiny is thus applicable under a Due Process Clause fundamental rights analysis.  (*Id.*)

C.   **The Fundamental Right To Marry Under The Equal Protection And Due Process Clauses Applies Regardless Of A Person's National Origin Or Alienage**

The fundamental right to marry is broadly held, regardless of the place of a person's birth or his or her alienage.  Though the Court's prior Opinion found Act 436 unconstitutionally denied the right to marry to "all" affected by Act 436, some language in that Opinion could be interpreted to mean that the right is limited to U.S. citizens. (ECF No. 77 at 13, 17.)  The Court's permanent injunction should not be so limited.  The Birth Certificate Provisions impermissibly discriminate based on national origin and deny the fundamental right to marry to persons born outside the United States—both citizens and noncitizens. And the constitutional rights at issue here are held equally by noncitizens.  The Birth Certificate Provisions must be struck down in their entirety because they violate the constitutional rights of persons born outside the United States. Any ambiguity in a permanent injunction could lead the Defendants to deny marriage licenses to others who have longstanding ties to the United States but have not yet attained citizenship.

*Buck v. Stankovic*, 485 F. Supp. 2d 576 (M.D. Pa. 2007), is on all fours.  There, a U.S.-born citizen and her undocumented immigrant fiancé brought suit after being denied a marriage

license.  The licensing authority had adopted a policy requiring foreign nationals to present either a green card or foreign passport with a valid United States visa.  The policy thus banned undocumented immigrants, who by definition lack a green card or valid visa, from obtaining a marriage license, as well as other non-citizens.  *Id.*

The court found that the policy significantly interfered with both the citizen and immigrant fiancés' fundamental right to marry under the Due Process and Equal Protection Clauses because it placed "a direct legal obstacle in the path of persons desiring to get married." *Id.* at 583.  Applying strict scrutiny, the court held that the couple were likely to succeed on the merits of their Due Process and Equal Protection claims and issued a preliminary injunction barring further enforcement of the policy.[5]

## II.  THE BIRTH CERTIFICATE PROVISIONS ARE NOT NARROWLY TAILORED TO SERVE A COMPELLING STATE INTEREST

This Court has already held that, as in *Buck*, strict scrutiny applies to Act 436, requiring Defendants to meet the heavy burden of demonstrating that the Birth Certificate Provisions are "narrowly tailored measures that further compelling governmental interests," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995), and "necessary to the accomplishment" of those interests.  *Loving*, 388 U.S. at 11; ECF No. 77 at 14.  "The government's purpose, even if compelling, 'cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'"  *Manwani v. U.S. Dep't of Justice*, 736 F. Supp. 1367, 1388 (W.D.N.C. 1990) (citation omitted).

---

[5]    Following issuance of the preliminary injunction, the parties entered into a Consent Order resolving the case in full.  *See Buck v. Stankovic*, No. 3:07-CV-0717, 2008 WL 4072656, at *1 (M.D. Pa. Aug. 27, 2008).

Defendants cannot and do not meet their burden.  In enforcing the Birth Certificate Provisions, Defendants here simply have no legitimate or cognizable interest in preventing foreign-born individuals precluded from obtaining a waiver under the Waiver Provisions or who cannot satisfy the Passport Requirement from obtaining a marriage license, nor are these provisions necessary to further any such interest.  To date, Defendants have come forth with no justification whatsoever in this case for the disparate treatment of foreign-born individuals under Act 436.  Any justification they may now conjure is an impermissible *post hoc* response to litigation.  Strict scrutiny requires the government's "justification [to] be genuine, not hypothesized or invented *post hoc* in response to litigation."  *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Additionally, both of the two alleged "fundamental interests" Act 436 itself identifies to purportedly justify its provisions fail to pass constitutional muster.  Indeed, both interests already were tested in *Buck* and soundly rejected by the court.  This Court should do the same.

First, the law cites a "fundamental concern" for the "reliability and accuracy" of marriage records.  Act 436, § 2(1).  But the State of Louisiana and Defendants' administrative interest in maintaining accurate records simply is not so compelling such that it could justify the invidious discrimination and deprivation of the constitutional right to marry of its residents like Mr. Vo. *See Henderson v. Adams*, 209 F. Supp. 3d 1059, 1076-78 (S.D. Ind. 2016) (holding that state's identified interest in "maintaining accurate records of biological parentage" was insufficiently compelling to interfere with the fundamental right to child rearing, permanently enjoining statute prohibiting listing of both same-sex parents on child's birth certificate).

Even if this were a compelling interest, the Birth Certificate Provisions are not narrowly tailored to advance this interest.  In *Buck*, the defendants claimed that requiring foreign nationals

to provide a green card or visa demonstrating lawful presence in the United States to obtain a marriage license was necessary and narrowly tailored to ensure the authenticity and accuracy of foreign identity documents.  The court rejected this argument, holding that while a concern with inaccurate or falsified documents may be "well-placed," though not compelling, a prohibition on issuing marriage licenses to foreign-born persons who could not produce the required documentation was not narrowly tailored.  485 F. Supp. 2d at 584; *see also Henderson*, 209 F. Supp. 3d at 1076-78 (prohibition on listing both same-sex parents on birth certificate not narrowly tailored to state's purported interest in maintaining accurate birth records.)

Similarly, here, preventing foreign-born persons without a birth certificate (or without a passport to accompany his or her birth certificate) from marrying altogether is staggeringly overbroad.  There is simply no indication that allowing Mr. Vo to obtain a waiver in lieu of a birth certificate and foregoing the Passport Requirement — like a U.S.-born citizen is entitled to do — would somehow undermine the "reliability and accuracy" of Louisiana's marriage records. And there is simply no indication that Mr. Vo is not who he purports to be.  Indeed, Mr. Vo provided numerous other forms of identification when he was denied a marriage license.  (SMF ¶ 8.)  Accepting these in lieu of a birth certificate, for example, would be more narrowly tailored to achieve Louisiana and Defendants' purported interest.

Indeed, the Act itself explicitly contains at least two other, more closely tailored mechanisms to ensure the accuracy of marriage records.  First, the waiver process itself is a narrowly tailored way to ensure the accuracy of marriage records.  For each individual who applies for a waiver, a judge must determine whether that person is who they claim to be.  The State has offered no indication that this waiver process is ineffective with foreign-born individuals; presumably a judge is just as able to determine a foreign individual's identity as they

16

are someone who was born in America.  Second, it requires applicants to swear or affirm to the accuracy of the information on the marriage application.  La. Stat. Ann. § 9:224(A)(7) (Supp. 2017).  Applicants must verify the information on the form under oath, subject to prosecution for the filing of a false public record under Louisiana Criminal Code § 14.133.  *Id.*  These two provisions are far more closely tailored solutions to combat potentially inaccurate records than preventing marriages by foreign-born persons altogether, as the Birth Certificate Provisions do.

Second, Act 436 cites an interest in "preventing and deterring fraudulent marriages."  But the "fraudulent marriages" that the Act seeks to address — those to obtain an immigration benefit — already are addressed by the federal immigration laws, through the Immigration and Naturalization Act ("INA").  As the *Buck* court noted, any interest that the State of Louisiana and Defendants may have in this federal issue is "not a sufficiently important *state* interest[]" to justify encroaching on the constitutional right to marry.  485 F. Supp. 2d at 584 (emphasis added).

Again, even if this purported interest were compelling, Act 436 and its Birth Certificate Provisions are not narrowly tailored to prevent marriage fraud.  Rather, they are vastly overinclusive, preventing far more people from obtaining marriage licenses than those seeking to commit fraud.  *See id.*; *Manwani*, 736 F. Supp. at 1388-89 (holding that provision of federal Immigration Marriage Fraud Act that treated as suspect all marriages entered during the pendency of removal proceedings to be impermissibly broad to satisfy strict scrutiny).

III.    **A PERMANENT INJUNCTION WILL PREVENT IRREPARABLE INJURY TO FOREIGN-BORN MARRIAGE LICENSE APPLICANTS, WHICH OUTWEIGHS ANY POSSIBLE DAMAGE TO DEFENDANTS, AND AN INJUNCTION ALSO SERVES THE PUBLIC INTEREST**

As the Court correctly concluded in issuing a preliminary injunction, Plaintiff has already demonstrated that the Defendants are inflicting irreparable injury on foreign-born marriage

license applicants, a harm that outweighs any possible harm to Defendants and shows that a permanent injunction is in the public interest.  (ECF No. 77 at 15-17.)

A.  **Without A Permanent Injunction, Defendants Will Cause Irreparable Injury In Violating The Constitutional Rights Of Foreign-Born Marriage License Applicants**

As the Court held, "no monetary award" can compensate for the denial of the right to marry and "the denial of constitutional rights 'for even minimal periods of time constitutes irreparable injury.'" (*Id.* at 16.) (citing *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)); *see also Campaign for S. Equality v. Bryant*, 64 F. Supp. 3d 906, 950 (S.D. Miss. 2014) (finding that deprivation of the constitutional right to marriage constituted irreparable harm), *aff'd*, 791 F. Supp. 3d 905 (5th Cir. 2015); *Marie v. Moser*, 65 F. Supp. 3d 1175, 1204-05 (D. Kan. 2014) (holding that plaintiffs satisfied the irreparable injury requirement by showing a likely violation of their constitutional right to marriage); *Burns v. Hickenlooper*, No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014) (same); *De Leon v. Perry*, 975 F. Supp. 2d 632, 663-64 (W.D. Tex. 2014) (holding that violation of constitutional right to marriage is irreparable harm as a matter of law because "no amount of money can compensate the harm"), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015); *Bassett v. Snyder*, 951 F. Supp. 2d 939, 970 (E.D. Mich. 2013) (finding irreparable injury where constitutional right to marriage was being "threatened or impaired"); *Buck*, 485 F. Supp. 2d at 586 (finding deprivation of constitutional right of marriage irreparably harms non-citizen and citizen marriage applicants).

Foreign-born marriage applicants like Mr. Vo (and those who they seek to wed) have already been irreparably harmed and continue to be in danger of being irreparably harmed by the deprivation of the constitutional right to marry, not to mention by the deprivation of the concrete

18

benefits from both the state and federal governments in areas such as health care and taxes, to which only legally married couples are entitled. *E.g.*, *Windsor*, 133 S. Ct. at 2695.

### B. The Balance Of Harms Favors Granting A Permanent Injunction

As the Court also concluded, the balance of harms favors granting injunctive relief because "[t]he state of Louisiana is not harmed by having to issue a marriage license to" those otherwise-qualified applicants who merely lack a birth certificate. (ECF No. 77 at 16.) There is no harm to the Defendants from issuing an injunction that prevents the enforcement of an unconstitutional statute. *E.g.*, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (*en banc*) (plurality opinion) ("[W]hen [a] law . . . is likely unconstitutional, the[] interests [of those [whom] the government represents, such as voters][,] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected."), *aff'd*, 134 S. Ct. 2751 (2014) (alterations in orginal) (citation omitted); *De Leon*, 975 F. Supp. 2d at 664.

Act 436 impermissibly burdens the constitutional rights of Louisiana residents like Mr. Vo, and the fact that Defendants may be forced to change their procedures to comply with the Constitution is no defense here. *See Campaign for S. Equality*, 64 F. Supp. 3d at 950-51 (finding that purported harm to defendant county clerk and state officials of administrative obstacles with modifying its paperwork and computer systems only a "minor inconvenience at best," substantially outweighed by deprivation of constitutional right to marriage). No harm would come to the Defendants or the State of Louisiana by preventing enforcement of Act 436. The state remains free to take other action to establish reasonable marriage license requirements that do not have the unconstitutional and discriminatory effects of Act 436.

Even if Defendants do identify an alleged injury, the Court should look upon it with skepticism. As the *Buck* court noted, "whatever harm felt by [the defendant charged with issuing

19

marriage licenses] surely is not as great as the harm experienced by Plaintiffs in being deprived of their fundamental constitutional right to marry." 485 F. Supp. 2d at 586.

### C.    A Permanent Injunction Serves the Public Interest

Finally, as this Court recognized, it is always in the public interest to prevent the violation of a party's constitutional rights. (ECF No. 77 at 17 (citing *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013))); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). This includes the fundamental right to marriage and the right to be free from discriminatory classifications. *Buck*, 485 F. Supp. 2d at 586-87.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment as to Counts I and II of the Amended Complaint, for a declaratory judgment, and for a permanent injunction should be granted.

Dated:  May 24, 2017                          Respectfully submitted,

                                              /s/ *Mary Yanik*
                                              _____

                                              Counsel for Plaintiff

### CERTIFICATE OF SERVICE

In accordance with L.R. 5.4, I hereby certify that on May 24, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Dated:  May 24, 2017

                                              /s Mary Yanik
                                              _____
                                              Mary Yanik

20